[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 19-13238

_____

TIMOTHY HOWARD SPRIGGS,

Petitioner-Appellant,

*versus*

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket Nos. 2:13-cv-14189-JEM,
2:10-cr-14013-JFM-1

_____

Before NEWSOM, MARCUS, Circuit Judges, and STORY, District Judge.

STORY, District Judge:

Timothy Howard Spriggs ("Spriggs") appeals the district court's denial of his Motion to Vacate, Set Aside or Correct Sentence ("Motion to Vacate") pursuant to 28 U.S.C. § 2255. Spriggs alleges ineffective assistance of counsel based on his trial attorney's decision not to pursue a motion to suppress "core evidence" against him, specifically, statements Spriggs made to law enforcement and evidence of child pornography obtained from his laptop computer. The district court held that Spriggs failed to demonstrate ineffective assistance of counsel and denied relief.

For the reasons set forth below, we affirm.

## I.

In January 2010, while conducting an internet investigation, Det. Brian Broughton of the Martin County Sheriff's Department identified an Internet Protocol ("IP") address from Hobe Sound, Florida flagged as a device involved in the transmission of child pornography on numerous occasions in December 2009. Det. Broughton matched the IP address to an internet subscriber account for Charlotte Roseman and subsequently confirmed that Roseman owned the real property associated with the suspect IP address—11501 Southeast Ella Avenue ("11501" or the "11501 property").

In preparation for applying for a search warrant, Det. Broughton visited 11501 to obtain pictures. While there, he discovered and photographed a *Bounder* recreational vehicle ("RV") parked "adjacent to the residence of 11501."

It is undisputed that the RV was, in fact, parked on a separate property from 11501 and had a street address of 11491. Following the post-remand hearing in this case, the district court found "no evidence that law enforcement knew the RV was located on a lot with a different lot number" at the time the warrant was executed.

Det. Broughton subsequently applied for and secured a search warrant authorizing a search of the 11501 property. The search warrant defined the "premise[] to be searched" as "11501 SE Ella Ave, Hobe Sound, FL 33450" and described the "residence" as a "single family home" with the number 11501 "affixed to the house." The warrant did not mention the RV, and the pictures attached to the application and warrant likewise did not depict the RV. In the affidavit accompanying the application for the warrant, which the warrant incorporated, Det. Broughton stated his belief that "the Premises and the curtilage thereof" were being used for the possession of child pornography.

On January 13, 2010, Det. Broughton and his partner, Det. Patrick Colasuonno, executed the search warrant. Det. Broughton wore an audio recording device, which he activated when they arrived. Det. Broughton did not record the entire time, but only recorded his exchanges with witnesses.

Upon their arrival at 11501, the detectives encountered Garry Spriggs and Junice Spriggs, the parents of Defendant/Appellant Timothy Spriggs ("Spriggs"); Phillip Spriggs, the brother of Spriggs; and Spriggs himself in the front yard (together, the "Spriggs family"). The Spriggs family advised Det. Broughton that the property owners were not home. In response to an inquiry from Det. Broughton whether the RV was "associated with the residence," Garry Spriggs answered in the affirmative and explained, "Yes, we park it in [Charlotte Roseman's] yard."

Det. Broughton explained the reason for his visit and that his investigation concerned "inappropriate material" such as "images of young children" being distributed from the IP address associated with the 11501 property. He asked if the property owners had Wi-Fi and learned that they had an available wireless internet connection but did not have a computer. Garry Spriggs explained that the Spriggs family purchased internet service from the property owners when in town. Det. Broughton explained to the Spriggs family that he was looking for a computer with peer-to-peer file sharing software on it that would allow for downloading materials from the internet.

At Det. Broughton's request, the Spriggs family contacted Ms. Roseman, and she was asked to return home for execution of the warrant. While awaiting Ms. Roseman's arrival, the detectives questioned the Spriggs family further about the presence of computers on the property. Spriggs said that he possessed a Dell

laptop computer that was in the RV, that he normally lived in Valdosta, Georgia, and that he used 11501 Ella Avenue as his address. Spriggs admitted that his laptop computer had file-sharing software on it and that his computer "[p]robably" had all three types of software Det. Broughton mentioned. After learning that there were computers in the RV, Det. Broughton advised the Spriggs family that because their computers were "on the property," they would also be subject to examination.

At some point after Det. Broughton explained with more specificity what he hoped to discover in the search, Spriggs asked to speak with the detectives privately, away from his family members. Spriggs told the detectives he was aware that there was "inappropriate" material on his laptop. Spriggs stated that the detectives needed only his computer and not the computers of his family members. When asked whether there was "a lot" on his computer, Spriggs stated that "it's going to look worse than it is." Spriggs was advised by both detectives several times that he was not under arrest but that they intended to collect and analyze all of the computers.

When Ms. Roseman arrived, Det. Broughton ended the conversation with Spriggs to speak with Ms. Roseman inside her house. Det. Colasuonno stayed outside with the Spriggs family, and Spriggs said he told his family that he had downloaded child pornography.

The detectives first conducted the search of the 11501 house and then the RV. Following remand, members of the Spriggs

family supplied affidavits describing what occurred the day of the search. In the Spriggs family affidavits, they state that a deputy accompanying Det. Broughton placed his hand on his firearm in the "ready" position, which they perceived as a show of authority and coercion. The Spriggs family was asked to wait outside the RV during the search. According to Spriggs and the Spriggs family, when asked about the ability to search the RV and seize the computers from the RV, Det. Broughton indicated that he had a warrant and that the Spriggs' RV "was included as 'curtilage' on the 11501 property Warrant." Det. Broughton reportedly advised the Spriggs family that he could search "anything on th[e] property" while simultaneously motioning with his arms to encompass the RV and a storage shed. The Spriggs family averred that they did not believe they had any choice but to allow the detectives to search the RV.

Approximately ten minutes into the search of the RV, a deputy told Spriggs that Det. Broughton needed him inside. Det. Broughton recorded his communications with Spriggs inside the RV. Det. Broughton asked Spriggs to identify his laptop. According to Spriggs' post-remand declaration, Spriggs initially refused to answer, but eventually confirmed which laptop belonged to him and also confirmed that the files containing child pornography were downloaded to a separate hard drive. Spriggs identified his computer, various hard drives, and the computers of family members. The detectives seized the computers and hard drives.

Before examining the computers and hard drives seized from the RV, Det. Broughton obtained a separate search warrant authorizing a search of the contents and extraction of child pornography from the devices. From Spriggs' Dell computer, Det. Broughton extracted 120 video files that contained child pornography.

On February 25, 2010, Spriggs was indicted by a federal grand jury in the Southern District of Florida and charged with a single count of knowingly receiving, by means of a computer, visual depictions of minors engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(2).

On March 30, 2010, without the benefit of a negotiated plea agreement, Spriggs entered a plea of guilty to count one of the Indictment. Spriggs also signed and agreed to a Stipulated Factual Basis in Support of Guilty Plea admitting to knowingly receiving child pornography. He faced a statutory penalty range of five to twenty years in prison. On October 18, 2010, Spriggs was sentenced to 180 months of imprisonment, which was below the applicable guideline range.

Spriggs exercised his right to direct appeal and successfully challenged an enhancement to his sentence under the Sentencing Guidelines based on distribution of child pornography. *United States v. Spriggs* (*Spriggs I*), 666 F.3d 1284, 1289 (11th Cir. 2012). On April 13, 2012, Spriggs was resentenced to 126 months of imprisonment, with all other aspects of his original sentence

remaining intact. Spriggs has since completed his custodial sentence.

In May 2013, with the aid of counsel, Spriggs filed his original Motion to Vacate under § 2255, alleging ineffective assistance of counsel. Specifically, Spriggs asserted that law enforcement violated his Fourth and Fifth Amendment rights by "improperly obtaining access to him" in order to record him illegally and search areas outside the scope of the search warrant, that law enforcement violated *Miranda v. Arizona*, 384 U.S. 436 (1966), by obtaining involuntary statements from him without consent, and that trial counsel should have known that the search warrant was falsely obtained and did not cover the RV where his computer and other media were seized.

Without conducting an evidentiary hearing, the magistrate judge issued a report and recommendation opining that trial counsel's failure to move to suppress would not have affected Spriggs' decision to plead guilty. The district court adopted the report and recommendation in its entirety and denied Spriggs' motion to vacate. Spriggs appealed.

On August 9, 2017, a panel of this Court reversed the denial of Spriggs' original Motion to Vacate and remanded the case for additional proceedings. *Spriggs v. United States* (*Spriggs II*), 703 F. App'x 888, 892 (11th Cir. 2017). The Court observed that the merits of Spriggs' Fourth Amendment challenge were not fully explored and that the "inquiry into trial counsel's performance in advising a client to plead guilty cannot be unmoored from the

merits of an alleged Fourth Amendment violation, particularly when, as here, [1] the defendant claims he is innocent of the offense he pled guilty to and [2] when a motion to suppress may have been outcome-determinative." *Id.* at 891. The Court explained as follows:

> The Supreme Court has said that, as far as performance goes, "[n]o reasonable lawyer would forgo competent litigation of meritorious, *possibly* decisive claims." *Kimmelman v. Morrison*, 477 U.S. 365, 382 n.7, 106 S. Ct. 2574, 91 L.Ed.2d 305 (1986) (emphasis added). And it recently clarified that to establish prejudice when the "decision about going to trial turns on [a defendant's] prospects of success and those are affected by the attorney's error—for instance, where a defendant alleges that his lawyer should have but did not seek to suppress [evidence]"—the defendant must show that "he would have been better off going to trial," a showing that unquestionably implicates (at least to some degree) the merits of the alleged Fourth Amendment violation. *Lee v. United States*, 137 S. Ct. 1958, 1965 (2017).

*Id.* at 891–92 (alterations in original). The Court continued, "[i]n cases like this one, where a [defendant] faults his lawyer for failing to pursue a motion to suppress prior to entering a plea, both the deficient performance and prejudice prongs of *Strickland* turn on

the viability of the motion to suppress." *Id.* at 892 (alteration in original) (quoting *Arvelo v. Sec'y, Fla. Dep't of Corr.*, 788 F.3d 1345, 1348 (11th Cir. 2015)).

On remand, the district judge referred the case to a magistrate judge for an evidentiary hearing. Consistent with the instructions on remand, evidence was received at the hearing addressing the merits of the hypothetical motion to suppress. Det. Broughton, Spriggs' trial counsel, Robin Rosen-Evans, the Assistant Federal Public Defender who originally represented Spriggs, and Spriggs testified at the hearing. Ms. Roseman and members of the Spriggs family provided affidavits in support of Spriggs' renewed Section 2255 motion.

Ms. Roseman, among others, supplied an affidavit averring that the 11501 and 11491 lots were separate and distinct, that she rented the property to the Spriggs family, that it was "common knowledge" there was no room on 11501 for a motor home given the narrow lots, that it was also known that she was trying to sell the 11491 lot, and that "For Sale" signs were posted.

As relevant to the issues presented, Det. Broughton testified that he believed the RV was parked on the same 11501 property or within the curtilage of 11501. He also testified about the voluntary, incriminating statements made by Spriggs.

In her testimony, Rosen-Evans explained her thought process and reasoning concerning the advice provided to Spriggs. She testified that her notes reflected that Spriggs admitted to her

he had downloaded child pornography and intended to enter a guilty plea. Rosen-Evans explained that she had discussed whether to file a motion to suppress with Spriggs before his guilty plea. But she "determined that it would not be in his best interest to file" the motion. From her investigation, Rosen-Evans found that there was a "contradiction between the police and the [Spriggs family]" as to whether the officers were granted permission to search the RV. She was concerned that if she filed a motion to suppress, then the court would have to take testimony, which could result in an adverse credibility determination against her client or his family. She believed that such a determination could hurt Spriggs at the sentencing phase. Not only could the pursuit of a suppression motion weaken Spriggs' chances of obtaining a downward variance, it could also result in him losing the benefit of an acceptance-of-responsibility reduction or exposing himself to an obstruction-of-justice enhancement. Rosen-Evans explained that her primary goal was to obtain the lowest sentence for her client, who was facing up to 20 years in prison. And she knew that Spriggs "need[ed] every break, every reduction [she] could get him." Moreover, Rosen-Evans thought that even if the officers did not have consent to search the RV, the suppression motion would have failed based on her belief that "there was probable cause for the issuance of a search warrant for the RV and that the evidence would have been inevitably discovered." In the end, Rosen-Evans determined that, because she thought a suppression motion would be unlikely to succeed and because there was significant downside

risk, filing the motion would not be "consistent with getting [her client] the best possible resolution."

Spriggs testified that, had he been properly advised, he would not have pled guilty. Spriggs stated that Rosen-Evans had discussed her reasoning for not filing a motion to suppress with him prior to his plea and that her explanation was consistent with her hearing testimony. On cross-examination, Spriggs identified a letter he wrote for purposes of his sentencing hearing corroborating Det. Broughton's testimony that Spriggs' statements to him on January 13, 2010 were voluntary and expressly stating that he "came forward to [Det. Broughton] willingly and of [his] own volition."

On February 28, 2019, the magistrate judge issued a report and recommendation that Spriggs' renewed Section 2255 Motion to Vacate be denied. The magistrate judge rejected Spriggs' contention that he need only show that a motion to suppress would have been "potentially meritorious." The magistrate judge noted that Spriggs had "the burden to show that his motion to suppress would have succeeded and that no competent attorney would have advised him otherwise." The magistrate judge agreed that Rosen-Evans had "erred in concluding that the inevitable discovery doctrine applied," because the police were "not in active pursuit of alternative legal means to obtain the evidence." *See United States v. Delancy*, 502 F.3d 1297, 1315 (11th Cir. 2007) ("[T]he prosecution must demonstrate that the lawful means which made discovery inevitable were being actively pursued prior

to the occurrence of the illegal conduct." (citations and quotation marks omitted)).  However, the magistrate judge explained that counsel's error was not dispositive and that, "[a]lthough [counsel] erred in the specific basis for her belief," she was "correct in believing and advising [Spriggs] that a motion to suppress could fail" and reasonably considered the downside risk to filing such a motion.

The magistrate judge deemed Rosen-Evans' testimony credible.  He further found that her testimony was supported by contemporaneous and "detailed notes and documentation" in her case file.  The magistrate judge acknowledged that Rosen-Evans met with Spriggs numerous times, met with and interviewed Spriggs' family as well as Ms. Roseman, investigated and researched potential defenses, and twice convinced the sentencing judge to vary below the guidelines based on mitigating circumstances.

The magistrate judge reasoned that the law was sufficiently unclear as to whether the curtilage doctrine, the automobile exception, or the good-faith exception to the warrant requirement would apply to these facts.  Accordingly, the magistrate judge concluded that:

> An attorney cannot be deemed ineffective for failing to pursue a motion to suppress for which viable arguments existed on both sides, particularly where—as here—that attorney must balance

important countervailing considerations about the potential impact of losing the motion.

The magistrate judge distinguished *Lee* by pointing out that "Lee did not have to establish deficient performance."

In the alternative, the magistrate judge recommended that Spriggs' motion could also be denied based on a failure to demonstrate prejudice from his counsel's alleged deficient performance. The magistrate judge found that Spriggs failed to show that, but for counsel's error, he would not have pleaded guilty and would have elected to proceed to trial.

Having reviewed the record, we conclude that the factual findings in the report and recommendation are not clearly erroneous and incorporate them herein as necessary. *See Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985) ("Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." (quoting Fed. R. Civ. P. 52(a))).

Over Spriggs' objection, on June 21, 2019, the district court adopted the report and recommendation. Spriggs appealed and moved for a certificate of appealability ("COA"), which was denied by the district court.

Spriggs then filed a motion for COA with this Court. This Court granted the motion on the following issue: "Whether trial counsel was ineffective for failing to file a motion to suppress the

statements made by Spriggs to law enforcement and the evidence of child pornography obtained from Spriggs's laptop computer."

## II.

We evaluate the district court's denial of a motion to vacate under § 2255 by exercising *de novo* review over legal conclusions and reviewing factual findings for clear error. *Osley v. United States*, 751 F.3d 1214, 1222 (11th Cir. 2014). A claim of ineffective assistance of counsel presents "mixed questions of law and fact" and, therefore, warrants *de novo* review. *Id.* The resolution of the issue in the present case turns on two questions: (1) Did *Lee* establish a different standard to be applied for the performance prong in a *Strickland v. Washington,* 466 U.S. 668 (1984), analysis in the context of giving advice concerning a plea? and (2) To prevail on a Sixth Amendment claim, must a defendant prove that a forgone motion to suppress would have been successful?

Spriggs urges the Court to find that, at the plea phase of a case, analysis of the performance prong under *Strickland* requires the Court to focus on whether there is a reasonable probability that the defendant would not have pled guilty based on the *actual* advice given by counsel, as opposed to viewing the issue from the perspective of a reasonably competent counsel. Spriggs asserts that the district court failed to limit its consideration to "counsel's <u>actual</u> decisionmaking and advice process," as required by *Kimmelman v. Morrison*. Appellant's Initial Br. at 44 (emphasis in original). Spriggs further asserts that the district court misinterpreted

*Kimmelman* and *Zakrzewski v. McDonough*, 455 F.3d 1254 (11th Cir. 2006), by not focusing its inquiry on "whether there is a reasonable probability that the defendant would not have pled guilty, not whether the defendant would have won the case." Appellant's Reply Br. at 6. A review of the relevant cases shows that the district court properly applied the standards enunciated in *Strickland* and elucidated by this Court in *Chandler v. United States*, 218 F.3d 1305 (11th Cir. 2000) (en banc), to evaluate the performance prong of counsel's representation of the defendant.

## A.

The Sixth Amendment guarantees criminal defendants the right to counsel. U.S. Const. amend. VI; *Gideon v. Wainwright*, 372 U.S. 335, 339–40, 343 (1963). As the Supreme Court has explained, "the right to counsel is the right to the effective assistance of counsel." *Strickland*, 466 U.S. at 686 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)). This right attaches not only during a criminal trial, but also when a criminal defendant is deciding whether to plead guilty. *See Lafler v. Cooper*, 566 U.S. 156, 162 (2012); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985).

To succeed on a claim of ineffective assistance of counsel, a defendant must establish both that (1) his attorney's "performance was deficient" and (2) his attorney's "deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687; *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009). This Court has previously observed that cases in which a criminal defendant can satisfy both

parts of the *Strickland* test "are few and far between." *Chandler*, 218 F.3d at 1313 (citation and quotation marks omitted).

Under *Strickland*'s performance prong, deficient performance requires a showing that "counsel's representation fell below an objective standard of reasonableness" given the "prevailing professional norms." *Strickland*, 466 U.S. at 688. A court's review of an attorney's performance is "highly deferential." *Id.* at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* Because this is no easy task, a court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range of reasonable professional assistance." *Id.* "And because counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, [he] must establish that no competent counsel would have taken the action that his counsel did take." *Chandler*, 218 F.3d at 1315 (citation omitted).

It is well established that counsel's performance and professional advice informs the voluntariness (and intelligence) of a defendant's decision to enter a guilty plea. *See McMann*, 397 U.S. at 770 ("a defendant's plea of guilty based on reasonably competent advice is an intelligent plea not open to attack on the ground that counsel may have misjudged the admissibility [of evidence]"); *see also McCarthy v. United States*, 394 U.S. 459, 466 (1969). "[T]he

voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases[,]" *Hill*, 474 U.S. at 56 (citation and quotation marks omitted), because, in addition to constituting a waiver of certain constitutional rights, "a guilty plea is an admission of all the elements of a formal criminal charge" and "cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." *McCarthy*, 394 U.S. at 466; *see also Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984).

As a result, when a defendant alleges that his counsel's "deficient performance led him to accept a guilty plea rather than go to trial, . . . we [ ] consider whether the defendant was prejudiced by the 'denial of the entire judicial proceeding . . . to which he had a right.'" *Lee*, 137 S. Ct. at 1965 (last alteration in original) (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000)); *Hill*, 474 U.S. at 59. The prejudice inquiry contemplates whether there is a "reasonable probability that but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Lee*, 137 S. Ct. at 1965 (quoting *Hill*, 474 U.S. at 59).

## B.

Spriggs contends that the district court failed to focus its inquiry on whether there is a reasonable probability that the defendant would not have pled guilty. However, the report and recommendation adopted by the district court specifically found "Defendant has not shown a reasonable probability that but for Rosen-Evans' error he would not have pleaded guilty and would

have insisted on going to trial." We agree with Spriggs that under *Lee* this is the proper prejudice standard, and we find that the district court did, in fact, apply that standard.

Spriggs next contends that counsel's performance must be judged by counsel's actual decision-making and advice rather than what a reasonably competent attorney would have done, but the cases do not support that position. *Kimmelman* does not hold that the performance prong is to be decided based solely on consideration of counsel's actual decision-making and advice. In *Kimmelman*, the petitioner asserted ineffective assistance of counsel premised on failure to litigate a Fourth Amendment claim competently. 477 U.S. at 368–73. The lack of diligence in *Kimmelman* was blatant; trial counsel failed to conduct any discovery, failed to thoroughly investigate, was unaware that a search was conducted, and was unaware of evidence seized that the government sought to introduce at trial. *Id.* *Kimmelman* clarified the distinct interests protected by the Fourth and Sixth Amendments and identified the nature of the constitutional values reflected in each amendment, as well as the elements of proof. *Id.* at 374–75. Evaluating performance under *Strickland*, the Supreme Court stated, "[n]o reasonable lawyer would forgo competent litigation of meritorious, *possibly* decisive claims," at least not "on the remote chance that his deliberate dereliction might ultimately result in federal habeas review." *Id. at* 382 n.7 (emphasis added). The Supreme Court explained further that, "[a]lthough a meritorious Fourth Amendment issue is necessary to the success of

a Sixth Amendment claim . . . , a good Fourth Amendment claim alone will not earn a prisoner federal habeas relief." *Id.* at 382.

The Supreme Court indicated approval of the "no competent lawyer" standard in a more analogous case, albeit before *Lee* was decided. *Premo v. Moore*, 562 U.S. 115, 124 (2011). In *Premo v. Moore*, the Supreme Court reversed the Ninth Circuit for failing to properly apply *Strickland* within the context of § 2254 and specifically for failing to afford sufficient deference not only to the state court but also to trial counsel's advice concerning a guilty plea. 562 U.S. at 126. *Premo* relied, in part, on *Kimmelman* and considered the reasonableness of trial counsel's decision to seek out and recommend a guilty plea at an early stage of the case rather than move to suppress defendant's confession. *Id.* at 124. *Premo* framed the relevant question under the *Strickland* performance prong as whether "no competent attorney would think a motion to suppress would have failed." *Id..* In doing so, the Supreme Court cited *Kimmelman*.

We find *Premo* instructive because the Court discussed the importance of "strict adherence" to the *Strickland* performance standard "when reviewing the choices an attorney made at the plea bargain stage" and the challenges unique to plea negotiations. *Id.* at 125. *Premo* acknowledged "certain differences between inadequate-assistance-of-counsel claims in cases where there was a full trial on the merits and those . . . where a plea was entered." *Id.* at 132. The Court suggested that the measure of deference might change at various stages of a criminal prosecution and discussed

the uncertainties posed to both sides in an early plea scenario, suggesting that the "added uncertainty that results when there is no extended, formal record and no actual history to show how the charges have played out at trial works against the party alleging inadequate assistance." *Id.* at 132.

*Lee* does not alter these holdings. *Lee*'s teachings inform the prejudice prong of the *Strickland* analysis, as opposed to the performance prong. While the two *Strickland* inquiries overlap to a degree, as we read *Lee*, its holding does not alter the *Strickland* performance analysis. In *Lee*, the government "concede[d] that Lee's plea-stage counsel provided inadequate representation" when he assured Lee that he would not be deported if he entered a guilty plea. 137 S. Ct. at 1964. The only issue for resolution was whether Lee could satisfy his burden to demonstrate prejudice. *Id.* at 1967. Regarding prejudice, the Court expressly noted the "unusual circumstances" presented in that both the defendant and trial counsel testified that "deportation was the determinative issue" to Lee, and there was undisputed evidence that, had Lee known that he could be deported if convicted, his attorney's advice would have been to run the risk of going to trial even if an acquittal was a long shot. *Id.* at 1967–68 ("But for his attorney's incompetence, Lee would have known that accepting the plea agreement would *certainly* lead to deportation" (emphasis in original) (quotation marks omitted)). But again, the performance prong wasn't at issue because it was conceded by the government. *Id.* at 1964.

The principles stated in *Chandler* hold true today. In *Chandler*, we found defense counsel's sentencing strategy objectively reasonable. Counsel chose to focus on lingering doubt at sentencing and did not actively pursue character witnesses for mitigation, other than defendant's wife and mother, out of fear of damaging cross-examination and rebuttal. 281 F.3d at 1320–21. Our language in *Chandler* is broad, and we discussed performance in two parts, both generally and relative to the specific facts. *Id.* at 1313–27. The "principles governing performance," *see id.* at 1313, are just that, overarching principles; and there is no indication that they vary when applied to a plea setting or that the *Strickland* performance standards depend on the stage of a case. *Chandler* is the preeminent authority in our circuit concerning the meaning and application of *Strickland.* And, since *Chandler*, we have continued to apply this standard, emphasizing that the *Strickland* performance prong sets "a high bar." *Butts v. GDCP Warden*, 850 F.3d 1201, 1207 (11th Cir. 2017) (quoting *Buck v. Davis*, 137 S. Ct. 759, 775 (2017)) (Section 2254).

Accordingly, Spriggs bears the burden to show that his attorney "made errors so serious that [she] was not functioning as the 'counsel' guaranteed [him] by the Sixth Amendment." *Strickland*, 466 U.S. at 687. He must show "that no competent counsel" would have given advice consistent with Rosen-Evans' advice or adopted the same defense strategy. *Chandler*, 218 F.3d at 1315. And we consider whether counsel's advice was objectively

19-13238                Opinion of the Court                23

reasonable at the time it was given to Spriggs—not in hindsight. *Strickland*, 466 U.S. at 689; *Chandler*, 218 F.3d at 1316.

## C.

In this case, counsel's professional advice to Spriggs was to forgo a motion to suppress and to tender a guilty plea. Spriggs contends that his attorney's performance fell below objectively reasonable standards because she misapplied the law to the facts in evaluating the merits of a potential suppression motion and gave unsound legal advice, which led Spriggs to enter a guilty plea. Specifically, counsel advised Spriggs that pursuing a motion to suppress evidence would not be in his best interest, that the inevitable discovery doctrine applied and any attempt to exclude the government from introducing Spriggs' laptop was likely to fail, and that she would not be filing a motion to suppress. The decision to move to suppress was for Spriggs' attorney to make. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983).

Having reviewed the evidentiary record developed following *Spriggs II*, we find that counsel's performance did not fall below the applicable standard. We first note that Spriggs' trial counsel has served as a federal defender for more than thirty years. Her experience is a factor in determining the deference a court may give to her strategic decision and advice to her client. Indeed, with experienced trial counsel, "the presumption that [counsel's performance] was reasonable is even stronger." *Chandler*, 218 F.3d at 1316; *accord Zakrzewski*, 455 F.3d at 1258.

In addition, Rosen-Evans' knowledge of Spriggs' admission and indication that he wished to enter a guilty plea influenced her defense strategy. Keep in mind that Spriggs volunteered to law enforcement that the offending laptop (the one containing child pornography flagged in Det. Broughton's investigation) was his and then made additional statements concerning his conduct and specifics of the underlying offense. According to Rosen-Evans' case file, Spriggs admitted downloading child pornography to her as well. The Supreme Court recognized in *Strickland* that "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." 466 U.S. at 691 ("Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant.").

"[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland,* 466 U.S. at 689. Here, Spriggs argues that Rosen-Evans did not make a strategic decision, but rather provided advice based on a "misunderstanding of the law" or her "mistaken beliefs." Appellant's Reply Br. at 4, 13. It is undisputed that Rosen-Evans was mistaken about the inevitable discovery doctrine. Again, though, because the test we apply in evaluating counsel's performance is an objective test, *see Strickland*, 466 U.S. at 688, her error is not determinative in this case. As explained in *Gordon v. United States*,

[I]t matters not whether the challenged actions of counsel were the product of a deliberate strategy or mere oversight. The relevant question is not what actually motivated counsel, but what reasonably could have motivated counsel.

518 F.3d 1291, 1301 (11th Cir. 2008) (*citing Roe,* 528 U.S. at 481); *see also Chandler,* 218 F.3d at 1314 (performance is reasonable "as long as the approach taken might be considered sound trial strategy" (citation and quotation marks omitted)). The district court found that, despite the error "in the specific basis for her belief, AFPD Rosen Evans was correct in believing and advising [Spriggs] that a motion to suppress could fail." As we consider what "reasonably could have motivated counsel[,]" *see Gordon,* 518 F.3d at 1301, given the particulars of this case, we turn next to the potential merits of the forgone motion to suppress and the potential risks to Spriggs should the motion have failed.

### 1. Merits of Forgone Motion to Suppress

Spriggs contends that his hypothetical motion was "very likely to succeed." Oral Arg. at 34:51-53. We disagree. Although the police did not possess a warrant for the RV specifically, the district court, like Rosen-Evans, determined that probable cause to search the RV existed before execution of the warrant. Spriggs' trial attorney testified that she believed law enforcement had probable cause to search the RV *before* Det. Broughton's erroneous statement that the warrant encompassed the RV.

In addition, three Fourth Amendment doctrines—curtilage, the automobile exception, and the good-faith exception—all cast doubt on the viability of a suppression motion.[1] Ultimately, though, the district court was correct that we need not definitively resolve these Fourth Amendment issues.

As suggested in *Chandler*, in nearly every case, there is something that a trial lawyer might have done differently. 218 F.3d at 1313. "But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Id.* (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)). And we conclude that an objectively reasonable defense lawyer would have recognized the obstacles to succeeding on a suppression motion and having the evidence excluded and could very well have offered Spriggs the same advice. Here is why.

The Fourth Amendment prohibits law enforcement from conducting "unreasonable searches and seizures." U.S. Const. amend. IV. A warrant is generally required before law

---

[1] Spriggs has abandoned any claim that his counsel was ineffective for failing to move to suppress voluntary statements he made to law enforcement prior to the search of the RV. Appellant's Reply Br. at 4 n.1. Spriggs clarifies that pre-search statements "would not be part of the relief resulting from suppression of the search itself." Id. He also points out that his statements concerning "ownership of the *offending* computer" occurred during the search of the RV. Id. It is also undisputed that Spriggs was not in custody at the time he made the incriminating statements to the detectives and was not subject to "custodial interrogation" for purposes of the Fifth Amendment and *Miranda*.

enforcement is authorized to conduct a search of "persons, houses, papers, and effects." *See Oliver v. United States*, 466 U.S. 170, 176–78 (1984) (citations omitted). The government bears the burden to establish the reasonableness of a warrantless search and the application of "one of the recognized exceptions to the warrant requirement, thereby rendering it reasonable within the meaning of the fourth amendment." *United States v. Freire*, 710 F.2d 1515, 1519 (11th Cir. 1983).

Following remand, the government asserted that the warrantless search of the RV could have been upheld on multiple grounds and that a motion to suppress would have failed. As discussed below, the district court subsequently determined that there were viable arguments both for and against application of exceptions to the warrant requirement. We agree with the district court and conclude that Spriggs has failed to demonstrate that "no competent attorney would think a motion to suppress would have failed." *Premo*, 562 U.S. at 124. We reach this conclusion primarily due to the good faith exception and law enforcement's reasonable belief that the search warrant for 11501 authorized the search of the RV.

### a. Good Faith Exception

We find good faith to be the most compelling argument as to why a motion to suppress would have failed. The Supreme Court has repeatedly emphasized that the "use of evidence obtained in violation of the Fourth Amendment does not itself violate the Constitution." *Pa. Bd. of Prob. & Parole v. Scott*, 524

U.S. 357, 362 (1998). Rather, the exclusionary rule is a "prudential" judge-made doctrine, *id.* at 363, and its "sole purpose . . . is to deter future Fourth Amendment violations," *Davis v. United States*, 564 U.S. 229, 236–37 (2011) (citations omitted). Thus, when considering whether to apply the exclusionary rule, courts must keep in mind that it is a rule of "last resort, justified *only* where the deterrence benefits of suppression outweigh the substantial social costs of ignoring the reliable, trustworthy evidence bearing on guilt or innocence." *United States v. Green*, 981 F.3d 945, 957 (11th Cir. 2020) (cleaned up); *see Davis*, 564 U.S. at 237.

The good faith exception takes "the culpability of the law enforcement conduct" into account and the level of culpability factors into the exclusionary rule analysis. *Davis*, 564 U.S. at 238 (quoting *Herring v. United States*, 555 U.S. 135, 143 (2009)). There is a strong argument that the good-faith exception would have applied here when we consider Det. Broughton's culpability and what was known to law enforcement the day of the search. In short, it is a tough sell to say that a "reasonably well trained officer would have known that the search was illegal in light of all of the circumstances." *United States v. Taylor*, 935 F.3d 1279, 1289 (11th Cir. 2019) (citation and quotation marks omitted). Det. Broughton obtained a warrant based upon probable cause developed through a lawful investigation. With the benefit of live testimony from Det. Broughton, the district court found that "there is no evidence that law enforcement knew the RV was located on a lot with a different lot number." We credit this factual finding. *See Anderson*, 470

U.S. at 573.  For as the district court explained, "[t]here was no sign with a different lot number, no fence between the two lots, and no one at the scene told the officers that the RV was on a different lot number."  Therefore, in executing that warrant, "the officers made, at most, an 'honest mistake' in interpreting the warrant to include the RV."  *United States v. Houck*, 888 F.3d 957, 960 (8th Cir. 2018) (quoting *Maryland v. Garrison*, 480 U.S. 79, 87 (1987)).

We agree with the district court that, at best, Det. Broughton was mistaken in concluding that the search warrant for 11501 authorized a search of the RV.  *See, e.g.*, *Utah v. Strieff*, 579 U.S. 232, 241 (2016).  As a result, it would have been reasonable for competent counsel to doubt that the evidence would be excluded.  *See Herring*, 555 U.S. at 146; *see also Davis*, 564 U.S. at 239 ("Isolated, nonrecurring police negligence . . . lacks the culpability required to justify the harsh sanction of exclusion." (cleaned up)).

For these reasons, we conclude that an objectively reasonable competent lawyer could have determined that it was likely that a suppression motion challenging the warrantless search of the RV would be defeated pursuant to the good faith exception.

### b. Curtilage

The district court found that although the language in the original search warrant did not expressly authorize a search "of anything other than the house designated as 11501[,]" the warrant "implicitly" authorized a search of the "curtilage" at the 11501 property.  Notwithstanding that the RV sat on a separate lot with

a different street address, the district court found there was a viable argument that the curtilage doctrine applied, bringing the Spriggs' RV within the scope of the search warrant for 11501.

On the day of the search, there were no statements made to law enforcement by Spriggs, his family members, or the property owners indicating that the RV was, in fact, sitting on a separate lot with a separate street address. After the fact, Ms. Roseman supplied an affidavit averring that the 11501 and 11491 lots were separate and distinct, and that a "For Sale" sign was on the 11491 lot, and implying that it was "common knowledge" there was no room on 11501 for a motor home given the narrow lots in the community, etc. Det. Broughton denied seeing a "For Sale" sign.

This Court has yet to address in a published opinion whether a search warrant that does not explicitly authorize a search of the curtilage of a residence subject to a search warrant implicitly does so. However, the majority of courts to decide the issue have held that, when a warrant authorizes the search of a particular residence, the authorization to search also extends to the curtilage of the residence.[2] We are guided and bound by *United States v.*

---

[2] *See, e.g.*, *United States v. Asselin*, 775 F.2d 445, 446–47 (1st Cir. 1985) (warrant that authorized search of "single family trailer" found to include vehicle parked next to trailer and birdhouse hanging from tree fifteen feet from trailer); *United States v. Gottschalk*, 915 F.2d 1459, 1461 (10th Cir. 1990) (collecting cases holding that "[a] search warrant authorizing a search of a certain premises generally includes any vehicles located within its curtilage if the objects of the search might be located therein").

*Napoli*, 530 F.2d 1198 (5th Cir. 1976).[3] The Fifth Circuit held in *Napoli* that a warrant authorizing the search of the premises of a single-family dwelling was sufficient to encompass a camper parked in the driveway of the dwelling. *Id.* at 1200.

"[A]lthough the private property immediately adjacent to a home is treated as the home itself, this area is not unlimited." *United States v. Taylor*, 458 F.3d 1201, 1206 (11th Cir. 2006). Instead, curtilage "is limited to that property that the individual should reasonably expect to be treated as the home itself." *Id.* (citing *United States v. Dunn*, 480 U.S. 294, 300 (1987)). When resolving questions concerning curtilage, the Supreme Court has identified four factors to consider:

> the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by.

*Dunn*, 480 U.S. at 301 (citations omitted).

Considering the *United States v. Dunn* factors, a motion to suppress evidence seized from the RV may have been defeated

---

[3] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc) ("We hold that the decisions of the United States Court of Appeals for the Fifth Circuit . . . handed down by that court prior to the close of business on [September 30, 1981], shall be binding as precedent in the Eleventh Circuit.").

pursuant to the curtilage doctrine. As revealed by the photographs, the RV was parked within three or four yards of the 11501 residence. Det. Broughton testified that the RV was so close to the 11501 residence that he did not question whether it was parked on a different lot. The close proximity of the RV to the 11501 residence is the strongest evidence in favor of finding that the RV was within the 11501 curtilage. *Dunn*, 480 U.S. at 301. Also, the Spriggs family advised Det. Broughton that they were staying in the RV—which was situated on the 11501 owner's yard—and that they were using the Wi-Fi from 11501. So too was one member of the Spriggs family staying in a bedroom at 11501. And so too was an electrical power cable connecting the RV directly to the house.

We agree with the district court that while numerous factual issues existed concerning potential application of the curtilage doctrine, under these circumstances, consideration of the doctrine by counsel in deciding to forgo a suppression motion would be reasonable.

### c. Automobile Exception

The district court found it "very likely that law enforcement's search of the Spriggs' RV would have been justified under the automobile exception" and agreed with the assessment of Rosen-Evans that probable cause to search the RV existed before the search occurred.

The automobile exception permits law enforcement to conduct a warrantless search of a vehicle if "(1) the vehicle is readily

mobile; and (2) the [law enforcement officers] have probable cause for the search." *United States v. Lindsey*, 482 F.3d 1285, 1293 (11th Cir. 2007). Other exigent circumstances are not required for the exception to apply. *Id.* (citing *United States v. Johns*, 469 U.S. 478, 484 (1985)).

In *California v. Carney*, 471 U.S. 386 (1985), the Supreme Court considered application of the automobile exception to motor homes. *Id.* at 387, 393–94. Acknowledging that a motor home "possessed some, if not many of the attributes of a home," the Supreme Court recognized that the justifications for the automobile exception, namely, being "readily mobile" and "a reduced expectation of privacy stemming from its use as a licensed motor vehicle subject to a range of police regulation inapplicable to a fixed dwelling," could also apply to a motor home depending on the circumstances. *Id.* at 393. In so ruling, the Supreme Court stated that if a motor home "is found stationary in a place not regularly used for residential purposes[,] temporary or otherwise," the automobile exception applies. *Id.* at 392–93. But the Court declined to decide whether that holds true where a motor home "is situated in a way or place that objectively indicates that it is being used as a residence." *Id.* at 394 n.3; *cf. also United States v. Adams*, 46 F.3d 1080, 1081 (11th Cir. 1995) (per curiam) ("The law regarding whether to apply to motor homes the established search and seizure principles applicable to motor vehicles, or those applicable to fixed places of residence has not been developed.").

In determining whether the automobile exception has application to a motor home, the Supreme Court considered the following facts potentially relevant: the vehicle's "location, whether the vehicle is readily mobile or instead, for instance, elevated on blocks, whether the vehicle is licensed, whether it is connected to utilities, and whether it has convenient access to a public road." *Carney*, 471 U.S. at 394 n.3; *see also Lindsey*, 482 F.3d at 1293 (explaining that a vehicle is "readily mobile" if it is "operational" (citation and quotation marks omitted)).

We find it less likely that the automobile exception would have applied here, particularly in light of the evidence that the Spriggs family was using the RV as a residence at that time. *See Carney*, 471 U.S. at 394 n.3. The Spriggs family was paying monthly rent to the property owners to park the RV on private property in a residential community. The RV was parked adjacent to the 11501 property—not in a driveway or on the street (though it did have ready access to the street). The photos reflect that an awning was extended on the RV as well. The fact that the Spriggs family was using the internet connection from the 11501 property likewise supports Spriggs' claim that the RV was being lived in and more akin to a home than a motor vehicle for purposes of Fourth Amendment analysis.

At minimum, factual questions existed concerning how "readily mobile" the RV was. The RV was not elevated on blocks, yet it was reportedly "chocked" to prevent accidental movement. The RV was also connected to utilities and cable. There is no

record evidence explicitly addressing whether the RV was licensed to operate and subject to regulation, registration, and inspection, though Garry had told officers that he and his wife had driven the RV down from Ohio a month or two prior. See Oral Arg. at 15:30-16:04.

More importantly, we agree with Spriggs that the cases relied upon by the government, referred to by Spriggs as "driveway cases," are inapposite because they involve instances where law enforcement either observed and/or could confirm mobility and the vehicle was not a fixed residence or being lived in. Appellant's Reply Br. at 11. As observed during oral argument, several of the factors that tend to support the government's curtilage argument tend to undermine the government's claim that the automobile exception would have applied. See Oral Arg. at 9:40-10:10.

While we find the applicability of this exception to be questionable, the fact that the district court found it to be potentially viable supports the conclusion that reasonably competent counsel could reach the same conclusion.

★★★

In conclusion, we need not decide, in hindsight, whether the exceptions to the Fourth Amendment's warrant requirement discussed by the district court would have applied here. For purposes of our analysis, the salient point is that it would have been objectively reasonable for competent counsel to decide that the existence of factual questions and the uncertainty surrounding the

availability of one or more exceptions to the warrant requirement weighed against filing a motion to suppress.

### 2. Trial Counsel's Risk Analysis

In reaching a decision whether to pursue a motion to suppress, Spriggs' trial counsel had to weigh against the possibilities that the motion would fail, the consequences to her client if the motion did, in fact, fail. Specifically, counsel considered the impact of an adverse credibility finding in the suppression hearing if the witness later testified at the sentencing hearing and the effect of filing a suppression motion on acceptance of responsibility and obstruction of justice at sentencing. We turn now to consideration of those potential consequences.

### a. Likelihood of Adverse Credibility Finding

Rosen-Evans feared that filing a suppression motion could result in an "adverse determination" by the judge as to the "credibility or honesty" of Spriggs or his family members.

In the event a motion to suppress had been pursued, the parties disagree about the need for live-witness testimony from Spriggs and/or family members to supplement the audio recording provided by Det. Broughton. While the need for testimony is debatable, one need only review the affidavits of members of the Spriggs family submitted for the remand hearing to see significant conflicts in the testimony of the family and the detectives. It was not unreasonable for Rosen-Evans to believe she would need to use testimony from Spriggs and/or his family to counter testimony of

the detectives. The magistrate judge found as a factual matter that the interactions between Det. Broughton and the Spriggs family after the search of the RV began were not recorded and that "[t]he only source of evidence about the conversation during [the search of the RV] comes from the Spriggs' Family members' affidavits." Rosen-Evans reasonably weighed the danger of such testimony in her analysis. She was concerned about the repercussions of suggesting that the detectives were not credible. She was also hoping to preserve the Spriggs' family members' testimony (i.e., credibility) in an attempt to secure mitigating factors at sentencing.

Attempting to avoid or minimize the risks associated with having to offer live witness testimony and preserve untainted witness testimony for mitigation at sentencing is a strategy that an objectively reasonable trial attorney could have chosen.

### b. Likelihood of Adversely Affecting Guidelines Calculations

Rosen-Evans also testified that pursuing a motion to suppress could have cost Spriggs the benefit of receiving an adjustment to his offense level for acceptance of responsibility. *See* U.S.S.G. § 3E1.1. She was concerned that filing the proposed suppression motion would have put Spriggs at risk of not getting credit for acceptance of responsibility and conceivably receiving an obstruction-of-justice enhancement at sentencing. *See id.* § 3E1.1, n.4 (conduct supporting obstruction-of-justice enhancement under § 3C1.1 "ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct"). If both risks materialized

and Spriggs was ineligible for acceptance and received an obstruction enhancement, Spriggs could have faced a 5-level increase in his offense level under the Sentencing Guidelines.

We highlight two points. First, the burden belonged to Spriggs to "clearly demonstrat[e] acceptance of responsibility and [a defendant] must present more than just a guilty plea." *United States v. Sawyer*, 180 F.3d 1319, 1323 (11th Cir. 1999); *accord United States v. Wright*, 862 F.3d 1265, 1279 (11th Cir. 2017). Second, "[t]he determination of whether a defendant has adequately manifested acceptance of responsibility is a flexible, fact sensitive inquiry." *United States v. Smith*, 127 F.3d 987, 989 (11th Cir. 1997) (en banc).

Spriggs argues that the guidelines risks were not real and that he would not have jeopardized an acceptance-of-responsibility reduction by electing to exercise his constitutional right to challenge the search. He correctly characterizes some of our precedent as holding, generally, that the mere exercise of constitutional rights by an accused is not a basis for denying a reduction for acceptance of responsibility. *United States v. Rodriguez*, 959 F.2d 193, 197 (11th Cir. 1992). *But see Smith*, 127 F.3d at 989 ("Our case law permits a district court to deny a defendant a reduction under § 3E1.1 based on conduct inconsistent with acceptance of responsibility, even when that conduct includes the assertion of a constitutional right.") (citing *United States v. Jones,* 934 F.2d 1199, 1200 (11th Cir. 1991); *United States v. Henry,* 883 F.2d 1010, 1011 (11th Cir. 1989)). Still, Spriggs cannot deny that

pursuing a suppression motion and losing—whether he subsequently entered a plea or proceeded to trial—would have placed him at risk of losing *at least one* of the three potential reduction points for acceptance of responsibility, which are recommended by the government. *See* U.S.S.G. § 3E1.1(b), n.6 (explaining that the government is "in the best position to determine" eligibility for additional one-point reduction). The guidelines recognize that both timeliness of a plea and the conservation of resources—government resources and the court's—may be considered by the prosecution in deciding whether to award the additional one-point reduction. *Id.* In sum, this was an objectively reasonable consideration and certainly a matter that could affect the sentencing court's view of Spriggs' case in fashioning a sentence "sufficient, but not greater than necessary" under 18 U.S.C. § 3553(a).

With respect to § 3553(a) factors, Rosen-Evans requested a variance below the sentencing guideline range, and her argument highlighted Spriggs' admission, voluntary cooperation with law enforcement (alleviating the need for law enforcement to obtain a second search warrant for the RV), post-arrest statement, and efforts towards rehabilitation. Trial counsel's strategy to mitigate sentencing exposure on Spriggs' behalf was successful in obtaining a custodial sentence below the applicable guideline range.

Finally, the mitigation letter Spriggs proffered at his original sentencing tells a different story than his post-conviction filings and claims of ineffective assistance of counsel. In 2010, which is the

relevant period of time for purposes of our *Strickland* analysis, Spriggs asserted (consistent with his inclination to plead guilty) that his cooperation with law enforcement early on was both intentional and redemptive. Spriggs represented that coming forward and volunteering the information to Det. Broughton about his laptop being in the RV and having child pornography on it was a step towards his recovery and rehabilitation. The same is true regarding Spriggs' contemporaneous statements at his original sentencing concerning satisfaction with trial counsel's representation.

In sum, Spriggs' trial counsel formulated a defense strategy that aligned with Spriggs' admission and voluntary statements to law enforcement, an evaluation of the merits of a potential motion to suppress, and an analysis of the attendant risks. Spriggs is unable to persuade this Court that "no competent counsel" could have decided to forego moving to suppress the evidence seized from the RV. *Chandler*, 218 F.3d at 1315; *Strickland*, 466 U.S. at 689.

Having concluded that Spriggs' counsel's performance was not constitutionally deficient, we need not reach the question of prejudice. *See Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013) ("If a defendant fails to satisfy either *Strickland* prong, we need not address both."); *accord Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000).

## IV.

Given that Spriggs is before us on a § 2255 Motion to Vacate, we are required to view his Fourth and Fifth Amendment arguments through an ineffective-assistance lens.  The magistrate judge's opinion adopted by the district court correctly points out that this distinction is significant.  As is borne out by our analysis, the difficulty in seeking to determine whether trial counsel's performance fell below an objectively reasonable standard, even in hindsight, is a valid reason for the stringent *Strickland* standard.  Here, we do not find that counsel's advice was constitutionally deficient.

**AFFIRMED.**