[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

———————————————

No. 04-15685

———————————————

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 13, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 04-00066-CV-3-RV

EDWARD J. ZAKRZEWSKI, III,

Petitioner-Appellant,

versus

JAMES MCDONOUGH, Secretary,
Florida Department of Corrections,
CHARLIE CRIST, Attorney General
of Florida,

Respondents-Appellees.

———————————————————————————

Appeal from the United States District Court
for the Northern District of Florida

———————————————————————————

(July 13, 2006)

Before EDMONDSON, Chief Judge, DUBINA and PRYOR, Circuit Judges.

PER CURIAM:

Florida prisoner Edward Zakrzewski appeals the district court's denial of his 28 U.S.C. § 2254 habeas corpus petition challenging his death sentence. The district court granted a certificate of appealability on two issues: "(1) whether trial counsel was ineffective for failure to object to statements made by the prosecutor in closing argument, and (2) whether trial counsel was ineffective for failure to file a motion to suppress evidence contained in the house which constituted the murder scene." Taking into account the pertinent state court decisions, we affirm the denial of habeas corpus relief.

## I. Background

Zakrzewski pleaded guilty to the first-degree murders of his wife, Sylvia, his five-year-old daughter, Anna, and his seven-year-old son, Edward. The circumstances for these murders, as recited by the Florida Supreme Court, involve these facts:

> Zakrzewski and his wife had been experiencing marital problems for some time prior to the murders. Zakrzewski twice told a neighbor that he would kill his family rather than let them go through a divorce. On June 9, 1994,

2

the morning of the murders, Edward called Zakrzewski at work and stated that Sylvia wanted a divorce. During his lunch break, Zakrzewski purchased a machete. He returned to work and completed his daily routine. That evening, Zakrzewski arrived home before his wife and children.  He hid the machete in the bathroom.

After his family arrived home, Zakrzewski approached Sylvia, who was sitting alone in the living room. He hit her at least twice over the head with a crowbar. The testimony established that Sylvia may have been rendered unconscious as a result of these blows, although not dead.  Zakrzewski then dragged Sylvia into the bedroom, where he hit her again and strangled her with rope.

Zakrzewski then called Edward into the bathroom to come brush his teeth. As Edward entered the room, Zakrzewski struck the boy with the machete. Edward realized what his father was doing and tried to block the blow with his arm, causing a wound to his wrist. Further blows caused severe head, neck, and back injuries, and resulted in death.

Zakrzewski then called Anna into the bathroom to brush her teeth. Zakrzewski testified that he hit the girl with the machete as soon as she entered the bathroom. The State's expert testified that the blood spatters from Anna show that the girl was kneeling over the bathtub when she was struck by the machete. Cuts were found on Anna's right hand and elbow, consistent with defensive wounds. The blows from the machete resulted in Anna's death. The evidence was in conflict as to whether Anna was aware of her impending death.

Finally, Zakrzewski dragged his wife from the bedroom to the bathroom. He still was not sure if she was dead, so he hit her with the machete. Sylvia died from blunt force injuries as well as sharp force injuries.

Following the murders, Zakrzewski drove to Orlando and boarded a plane bound for Hawaii. While in Hawaii, Zakrzewski changed his name and lived with a family who ran a religious commune. After he had been there four months, the family happened to watch the television show "Unsolved

Mysteries," which aired Zakrzewski's picture. Zakrzewski turned himself in to the local police the next day.

Zakrzewski v. Florida, 717 So.2d 490, 490-91 (1998). During the penalty phase, the trial court found three aggravating factors applied to each murder: (1) Zakrzewski was previously convicted of other capital offenses (the contemporaneous murders); (2) the murders were committed in a cold, calculated, and premeditated manner without pretense of legal or moral justification; and (3) the murders were committed in an especially heinous, atrocious, or cruel manner (HAC). The court found two statutory mitigators: (1) no significant prior criminal history and (2) the murders were committed while Zakrzewski was under the influence of extreme mental or emotional disturbance. Zakrzewski presented twenty-four nonstatutory mitigators, each of which was considered by the sentencing court.

Following the penalty phase hearing, the jury recommended death for the murders of Zakrzewski's wife and son by a 7-5 vote, and life in prison without possibility of parole for Anna's murder. The court sentenced Zakrzewski to death for all three murders. On direct appeal, the Florida Supreme Court affirmed Zakrzewski's convictions and sentences.[1] Zakrzewski then filed a motion in state

---

[1]The Florida Supreme Court decided that the HAC aggravating factor was not applicable to Zakrzewski's wife but that the error was harmless. See Zakrzewski, 717 So.2d at 492-93.

court for post-conviction relief under Florida Rules of Criminal Procedure 3.850 and 3.951 that raised five claims, including the claims currently before us. The state trial court denied post-conviction relief on all claims; the Florida Supreme Court affirmed. Zakrzewski then filed a 28 U.S.C. § 2254 petition in the district court raising six claims. The district court denied relief on all claims, but issued a certificate of appealability on two issues: "(1) whether trial counsel was ineffective for failure to object to statements made by the prosecutor in closing argument, and (2) whether trial counsel was ineffective for failure to file a motion to suppress evidence contained in the house which constituted the murder scene." The district court concluded that the Florida Supreme Court did not unreasonably apply controlling law in determining that trial counsel had provided effective assistance, because (1) trial counsel's failure to object to closing argument was part of a reasonable trial strategy; (2) the motion to suppress that counsel did not file would have involved a non-meritorious claim; and (3) Zakrzewski failed to show he was prejudiced by trial counsel's failure to file the motion to suppress.

## II. Standard of Review

We review the final state judgment on Zakrzewski's claims pursuant to 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Section 2254(d) allows federal habeas to be granted for a claim adjudicated on the merits in state court only if the state court adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Factual findings by the state court are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme

Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams v. Taylor, 120 S.Ct. 1495, 1523 (2000).

## III. Discussion

The Florida courts correctly identified Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052 (1984), as the controlling legal authority for ineffective assistance of counsel claims. See Williams, 120 S.Ct. at 1499; Marquard v. Sec'y for Dept. of Corrections, 429 F.3d 1278, 1304 (11th Cir. 2005), cert. denied, 126 S.Ct. 2356 (2006). To prevail on a claim of ineffective assistance, petitioner must prove both incompetence and prejudice by showing that (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Chandler v. United States, 218 F.3d 1305, 1312-13 (11th Cir. 2000) (en banc) (quoting Darden v. Wainwright, 106 S.Ct. 2464, 2473 (1986) (quoting Strickland, 466 U.S. at 688, 694; 104 S.Ct. at 2064, 2068)).

The standard governing counsel's performance is "reasonableness under prevailing professional norms." Strickland, 104 S.Ct. at 2065. "'The purpose of

ineffectiveness review is not to grade counsel's performance,' but to determine whether that performance fell within the broad range 'of what might be a reasonable approach at trial.'" Marquard, 429 F.3d at 1304 (quoting Chandler, 218 F.3d at 1313). "Judicial scrutiny of counsel's performance must be highly deferential." Strickland, 104 S.Ct. at 2065. "Courts must 'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'" Chandler, 218 F.3d at 1314 (quoting Strickland, 104 S.Ct. at 2065-66). "[C]ounsel cannot be adjudged incompetent for acting in a particular way in a case, as long as the approach taken 'might be considered sound trial strategy.'" Id. (quoting Darden, 106 S.Ct. at 2474). Counsel's conduct may be found unreasonable only if petitioner shows "that no competent counsel would have taken the action that his counsel did take." Marquard, 429 F.3d at 1304 (quoting Chandler, 218 F.3d at 1315). "When courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger." Chandler, 218 F.3d at 1316. The trial court found that both of Zakrzewski's trial counsel had "vast experience in criminal defense."

## A. Closing Arguments

Zakrzewski claims his trial counsel were ineffective for not objecting to statements made by the prosecutor during closing argument, including statements that Zakrzewski was fascinated with the anti-Christian writings of German philosopher Nietzsche.[2] At the evidentiary hearing on Zakrzewski's ineffective assistance claim, Defendant's trial counsel, Issac Bruce Koran and Elton Killiam, testified that, if they did not object to a closing argument, it was either because of strategy or a belief that the comment was not objectionable. Killiam testified that he believes cases must be won at trial, not on appeal, and prefers not to make

---

[2]The prosecutor said the following about Zakrzewski's religious beliefs and interest in Nietzsche:

> [A] factor of his disturbance that his own psychologist, Dr. Larson, admitted was that [Zakrzewski] was narcissistic. He had these narcissistic tendencies and his fascination with Nietzsche's superman, the ideal superman who despises Christianity.
> . . .
> After he came back from Molokai and before he went, he was fascinated with Nietzsche. Nietzsche denounces Christianity. In his own words in this writing here, [Zakrzewski] denounces Christianity. . . . He said, "Christianity is a primary culprit in propagating the belief that suicide is a ticket to eternal damnation. Ludicrous. All that's required are a couple of I believes and please forgive me. The Bible says it. This doctrine of eternal damnation is but another route of egress for spineless fools."
>
> That's surrounded by Nietzsche philosophy about the creative superman. So, you be sure to weigh his philosophy about Christianity with whether or not he should be forgiven for appearing to accept Christianity in Hawaii.

(R. 15, Ex. 3-X at 1216, 1223-24.)

objections during closing argument unless the objection is a strong one.  An objectively reasonable trial lawyer could so believe.

About the prosecutor's religious argument, Koran testified that he did not object because the prosecution "had evidence of writings [Zakrzewski] had made [in prison] subsequent to being brought back here to this area and they seemed relevant to us that you'd be able to argue that."  During trial, defense counsel had presented mitigating evidence that Zakrzewski "embraced the Christian Faith since the offense."  The government responded with evidence that before and after the offense Zakrzewski read and copied quotes from the writings of German philosopher Nietzsche and that Nietzsche's philosophy is considered anti-Christian.  Defense counsel timely objected to the admission of this evidence, but the objection was overruled because the defense had placed Zakrzewski's religious beliefs at issue.[3]  An objectively reasonable trial lawyer could have

---

[3]Zakrzewski's trial counsel had already presented testimony from six witnesses, including Zakrzewski, about Zakrzewski's prayer life and church attendance after the murders.  In an attempt to prevent admission of Zakrzewski's notes about Nietzsche's philosophy, defense counsel argued that his earlier questions were intended to show Zakrzewski's remorse, not his "religious convictions or beliefs.  It would be improper in my opinion for the state to go into that. . . . [W]e're not going to argue that to the jury as a mitigator in this case."  The government responded that because the defense had already presented evidence of Zakrzewski's religious practices, it was entitled to present rebuttal, whether or not the defense ultimately chose to argue that Zakrzewski's faith was a mitigating factor to the jury. The trial court overruled defense counsel's objection and admitted Zakrzewski's writings -- which referenced Nietzsche and Christianity -- into evidence.  The trial court sustained a defense objection when the prosecutor asked Zakrzewski whether Nietzsche's writings were anti-Christian, but later admitted expert testimony about this topic over defense objection.  Defense counsel then chose to argue to the jury in closing that Defendant's post-offense

10

concluded that an objection to the prosecutor's closing argument about Defendant's religious beliefs was not the thing to do given these circumstances.

Zakrzewski has failed to show that counsel's not objecting to the contested statements during closing argument was a course no competent counsel would have taken.[4]  In addition, review of the entire penalty phase shows that defense counsel presented substantial mitigation through lay and expert witnesses, presented a thorough penalty phase closing argument that was responsive to the identified prosecutorial comments, and objected and moved for a mistrial in response to other closing argument.  We conclude that the state courts reasonably determined that, considering the applicable federal law, Zakrzewski failed to show that trial counsel's not objecting to the pertinent closing comments was deficient performance.  We affirm the district court's denial of relief on this claim.

---

embrace of the Christian faith was a mitigating factor.

[4]Defendant argues that it was objectively unreasonable for trial counsel not to object to the prosecutor's closing argument about Defendant's religious beliefs in the light of <u>Dawson v. Delaware</u>, 112 S.Ct. 1093 (1992), which held that it was constitutional error to admit evidence that the defendant was a member of the Aryan Brotherhood during a penalty hearing where that evidence proved only abstract beliefs that had no relevance to the issues being decided.  <u>Dawson</u> is easily distinguished from this case because the Court in <u>Dawson</u> said the evidence would have been admissible if it had been relevant to rebut mitigating evidence offered by the defendant.  <u>See</u> 112 S.Ct. at 1098-99.

11

## B.  Failure to Move to Suppress Evidence

Zakrzewski argues his trial counsel were ineffective because they did not move to suppress evidence from the murder scene that was discovered inside Zakrzewski's house during a warrantless search and later seized pursuant to a warrant.  Zakrzewski argues the initial search did not fit any exception to the warrant requirement and that the fruits of that search were therefore suppressible. To obtain relief where an ineffective assistance claim is based on trial counsel's failure to file a timely motion to suppress, a petitioner must prove (1) that counsel's representation fell below an objective standard of reasonableness, (2) that the Fourth Amendment claim is meritorious, and (3) that there is a reasonable probability that the verdict would have been different absent the excludable evidence.  Kimmelman v. Morrison, 477 U.S. 365, 375, 106 S.Ct. 2574, 2582-83 (1986).

Zakrzewski's trial counsel testified that they chose not to file a motion to suppress because they believed the warrantless search was supported by exigent circumstances and that filing the motion would be futile: the position taken by the

12

state court later.[5]  An objectively reasonable lawyer could have chosen to file no motion to suppress.  The warrantless search was conducted by Deputy Robert Baczek four days after the murders.  The Deputy responded to a call from Zakrzewski's Air Force Sergeant -- Zakrzewski was serving in the Air Force at the pertinent time -- who became concerned when Zakrzewski did not show up for class and could not be located by calling his home, the hospital, or the police.

During an inspection of Zakrzewski's house exterior, the Deputy found several days' accumulation of mail and a broken window covered by a screen. The Deputy testified he found this suspicious and "feared for the welfare of whomever may have been in the house at that time, thinking that there may have been a burglary, the family may have been on vacation, or something like that." The Deputy announced his presence before and immediately after entering the residence through the broken window and moved quickly from room to room looking for injured residents and perpetrators.  After discovering the dead bodies, the Deputy completed a preliminary sweep of the house to ensure the perpetrator was not present.  Once backup arrived, the officers briefly conducted a full sweep

---

[5]See Mincey v. Arizona, 98 S.Ct. 2408, 2413 (1978) ("We do not question the right of the police to respond to emergency situations.  Numerous state and federal cases have recognized that the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid.").

13

of the house and then sealed the house until a warrant was obtained. Based on the record facts, the state 3.850 court concluded -- we accept reasonably -- that the warrantless search of Zakrzewski's house was justified by exigent circumstances.[6]

Zakrzewski has failed to show that trial counsel's decision not to file a motion to suppress the evidence discovered during the warrantless search was a course no competent counsel would have taken under the circumstances. We conclude the Florida Supreme Court's determination that Zakrzewski failed to show deficient performance was a reasonable application of Strickland.[7]

## IV. Conclusion

The district court's denial of Zakrzewski's 28 U.S.C. § 2254 petition is AFFIRMED.

---

[6]The district court also found that a reasonable lawyer could have concluded that filing a motion to suppress was futile because (1) Zakrzewski had abandoned his house and its contents, making any expectation of privacy unreasonable, see Abel v. United States, 362 U.S. 217, 241, 80 S.Ct. 683, 698 (1960), United States v. Winchester, 916 F.2d 601, 602 (11th Cir. 1990); and (2) discovery of the dead bodies was inevitable. We agree. By the time the Deputy searched the house, Zakrzewski had already fled to Hawaii -- where he remained for four months before turning himself in -- and had no plans to return to the house or to provide for its upkeep.

[7]Because it is unnecessary to our conclusion, we do not decide today whether the Florida Supreme Court reasonably concluded that Zakrzewski failed to satisfy the prejudice element of this ineffective assistance claim.

14