IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 4, 2022

**RANDALL R. WARD v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Madison County**
No. C-20-293      Donald H. Allen, Judge
———————————————————

**No. W2021-01421-CCA-R3-PC**
———————————————————

The petitioner, Randall R. Ward, appeals the denial of his post-conviction petition, arguing the post-conviction court erred in finding he received the effective assistance of counsel. After our review of the record, briefs, and applicable law, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR. and TOM GREENHOLTZ, JJ., joined.

William J. Milam, Jackson, Tennessee, for the appellant, Randall Ray Ward.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Jody S. Pickens, District Attorney General; and Al Earls, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

***Factual and Procedural History***

A. Trial

Following a jury trial, the petitioner was convicted of one count of trafficking a person for a commercial sex act and two counts of promoting prostitution for which he received an effective sentence of twenty years' incarceration. The petitioner appealed. On appeal, this Court held that one of the petitioner's convictions for promoting prostitution should have merged with his conviction for trafficking a person for a commercial sex act. *State v. Randall Ray Ward*, No. W2019-00345-CCA-R3-CD, 2020 WL 974193 (Tenn.

Crim. App. Feb. 27, 2020), *no perm. app. filed.* As a result of the merger, the petitioner's sentence was reduced to a total effective sentence of sixteen years' incarceration. This Court affirmed the petitioner's convictions and sentences in all other respects. *Id.* at *1.

On appeal, this Court summarized the facts supporting the petitioner's conviction as follows:

> T.G.[1] testified she was a heroin addict for twenty years, and, to support her habit, she began engaging in acts of prostitution. Initially, she worked for a man named Chew. However, after a physical altercation, T.G. wanted more protection. The [petitioner] approached her and promised to take care of her if she worked as a prostitute for him.
>
> S.C. testified she met the [petitioner] shortly after moving to Jackson. Like T.G., S.C. was addicted to heroin and moved to Jackson for easier access to drugs. While in Jackson, S.C.'s friend posted an ad for her on Backpage, a website containing advertisements for commercial sex services. Three days after her ad was posted, the [petitioner] contacted S.C. and asked her to work for him. The [petitioner] promised S.C. she would "never have to be dope sick" again. S.C. explained "dope sick[ness]" occurs when your body goes through heroin withdrawal.
>
> To procure clients for T.G. and S.C., the [petitioner] took "almost nude" photographs of them posing suggestively. T.G. and S.C., who went by the names "Barbie" and "Peaches," respectively, posed both alone and together. Although only the [petitioner] took T.G.'s pictures, S.C. testified both the [petitioner] and T.G. took pictures of her. The [petitioner] then edited the pictures and used them in advertisements he posted on Backpage. The advertisements listed T.G. and S.C.'s location as Jackson and provided their cell phone numbers for potential clients to contact. Neither T.G. nor S.C. had the password to the [petitioner]'s Backpage account and had no control over the content of the advertisements or how long they stayed on the website.
>
> While working for the [petitioner], T.G. acted as his "bottom." She explained that this meant she was the [petitioner]'s "right[-]hand man." As a "bottom," T.G. had access to better quality drugs, slept in her own room,

---

[1] It is the policy of this Court to refer to victims of sexual crimes by their initials. We intend no disrespect.

- 2 -

and recruited women to work in the [petitioner]'s "stables." Additionally, if the [petitioner] were not present, T.G. was in charge of the other women.

T.G. and S.C. testified the [petitioner] was both physically and mentally abusive. The [petitioner] kept all of the money they earned, and, if he believed they were not seeing enough clients, he would withhold drugs until they earned more money. T.G. estimated she saw eight to fifteen clients each day and charged $200 per hour. Although the clients paid T.G. and S.C. directly, all of the money they earned went to the [petitioner] immediately after the client left. In addition, the [petitioner] controlled where T.G. and S.C. slept, when they ate, and what they wore. The [petitioner] also kept both T.G. and S.C.'s identification in his wallet, only relinquishing them when they were needed to rent a hotel room. However, after the room was paid for, the [petitioner] immediately regained control of the ID.

If T.G. refused to perform a sexual act with a client, the [petitioner] would threaten her, asking why she was "going to make [him] kill [her]." The [petitioner] also threatened to abandon T.G. with "just the shirt on [her] back." Although she wanted to leave, T.G.'s drug addiction acted like "invisible handcuffs," preventing her from escaping the [petitioner]'s grasp. However, shortly before the [petitioner]'s arrest, T.G. attempted to escape while the [petitioner] was asleep. As she was running from the hotel, the [petitioner] chased her, pulled her hair, and "threw [her] around."

S.C. testified she was not forced to see particular clients as long as she "made up the money . . . another way." When asked if she were able to come and go as she pleased, S.C. stated she "never really tested that theory" because she was afraid of what the [petitioner] would do to her. Once, the [petitioner] was physically violent with S.C. to "prove . . . he was in control." Another time, S.C. saw the [petitioner] hit T.G., resulting in a "big knot on her head" and bruises.

On June 14, 2017, T.G., S.C., the [petitioner], and another woman travelled from Jackson to Memphis to meet clients. After checking into a hotel, S.C. and the other woman overdosed on heroin. Although S.C. recovered from her overdose, T.G. took the other woman to the hospital. Officers from the Bartlett Police Department arrived at the hospital to investigate the overdose, and T.G. was taken into custody. However, T.G. did not initially disclose her relationship with the [petitioner] because she was only concerned with "getting that next lick of dope." Likewise, when initially questioned, S.C. did not reveal her connection with the [petitioner].

- 3 -

However, after she was arrested in Madison County two weeks later, S.C. spoke to Special Agent Chris Carpenter with the Tennessee Bureau of Investigation and disclosed that she was working as a prostitute for the [petitioner].

On cross-examination, T.G. acknowledged having perks as a result of being the [petitioner]'s "bottom," including additional freedom and her own cell phone, and she agreed she never reached out to family or friends for help. T.G. also acknowledged she sometimes used physical violence or threats to control the other women when the [petitioner] was not present. Although she was initially charged with the same offenses as the [petitioner], the charges were dropped after she agreed to cooperate with police.

On cross-examination, S.C. agreed she did not reveal that the [petitioner] was physically violent until the second time she spoke with Special Agent Carpenter and acknowledged she was allowed to attend rehab shortly after giving the police her statement. S.C. also agreed she was allowed to get food without the [petitioner] but testified T.G. was always with her if the [petitioner] was not present.

Detective Mike Christian with the Bartlett Police Department responded to a report of an overdose at a local hospital on June 14, 2017. After speaking with T.G., Detective Christian obtained a search warrant for the [petitioner]'s hotel room and instructed fellow detectives to arrest the [petitioner]. Detective Christian searched the [petitioner]'s hotel room, finding a number of cell phones, a laptop computer, and various documents. Following the [petitioner]'s arrest, Detective Christian seized the [petitioner]'s wallet and a Samsung Galaxy cellphone. In the [petitioner]'s wallet, Detective Christian discovered S.C.'s state-issued ID and a handwritten note which read "I, [S.G.], give my human rights up to my daddy, T-Bone, for the rest of forever as long as we continue showing our mutual respect forever." S.C. admitted writing the note but testified it was as a joke. She stated the note was a gift for the [petitioner] because she wanted to do "something nice for him."

Lieutenant Jerry Springer with the Bartlett Police Department conducted an examination of the Samsung Galaxy cell phone found on the [petitioner] at the time of his arrest. During the examination, Lieutenant Springer extracted videos, photographs, text messages, and phone logs. In particular, the phone contained scantily clad pictures of T.G. and S.C. with the names "Barbie" and "Peaches" superimposed on them. Lieutenant

- 4 -

Springer also recovered several photographs of the [petitioner] with T.G. and S.C.

The [petitioner] declined to present evidence. Following deliberations, the jury found the [petitioner] guilty of promoting prostitution with regard to his actions against T.G. (Count two) and trafficking a person for a commercial sex act and promoting prostitution with regard to his actions against S.C. (Counts three and four). The [petitioner] was found not guilty of trafficking a person for a commercial sex act with regards to T.G. (Count one).

*Ward*, 2020 WL 974193, at *1-3.

B. Post-Conviction Hearing

On November 2, 2020, the petitioner filed a pro se petition for post-conviction relief, alleging, among other things, trial counsel was ineffective for failing to provide the petitioner with certain items of discovery and failing to file a motion to suppress evidence obtained by the Bartlett Police Department. After the appointment of counsel, the petitioner proceeded to a hearing on his original petition on August 30, 2021, during which the petitioner and trial counsel testified.

Trial counsel, who had been practicing criminal law for over fifteen years at the time of the post-conviction hearing, testified that he filed a motion for discovery upon being appointed to the petitioner's case. As a result of his request, trial counsel was provided open file discovery from the Madison County District Attorney's office, and the State's discovery was later supplemented by the Bartlett Police Department as the petitioner had a similar case pending in Shelby County. When asked if he provided the petitioner a complete copy of the State's discovery, trial counsel stated that he did not allow the petitioner to keep certain pictures of the petitioner's victims because he did not think the jail would allow the petitioner to have them based on their provocative nature. Additionally, trial counsel did not provide the petitioner with copies of the victims' statements; however, trial counsel reviewed the statements and provided the petitioner with a copy of his notes. Trial counsel testified that he met with the petitioner "at least a half dozen times" and that those meetings "were pretty lengthy because obviously the case had a lot of issues with being two victims and so forth. So, they would usually be pretty lengthy."

According to trial counsel, the State made a plea offer the day before trial. Per the State's offer, the State agreed to dismiss both counts of sex trafficking and allow the petitioner to plead to both counts of promoting prostitution with consecutive four-year

terms. Based on the proof against the defendant, trial counsel recommended that the petitioner accept the State's plea offer.

When questioned about certain hotel receipts the State introduced at trial in order to establish Madison County as the proper venue, trial counsel could not recall whether or not the petitioner reviewed the receipts prior to trial. However, trial counsel noted that the receipts were not the State's only proof establishing Madison County as the proper venue. For example, trial counsel recalled that the Backpage advertisement mentioned Jackson as the victims' location, and the victims testified that they "committed sex acts in Jackson in hotels and motels here in Jackson."

The petitioner was the only other witness to testify during the post-conviction hearing. The petitioner testified that he only met with trial counsel four or five times and that those meetings lasted two or three minutes. The petitioner claimed he was not provided with the pictures of the victims or the hotel receipts until they were introduced at trial. He also claimed he did not have an opportunity to review the victims' statements.

When asked about the State's plea offer, the petitioner testified that he did not accept the offer "because I wasn't guilty." However, when asked if he thought seeing the hotel receipts prior to trial "might have changed your mind whether or not to proceed to trial," the petitioner stated, "probably." On cross-examination, the petitioner admitted he was with the victims "in a motel in Jackson, but it wasn't like trying to make them do anything." However, the petitioner also admitted he knew the victims "were doing things in motels."

At the conclusion of the hearing, the post-conviction court entered an order denying the petition. In his order, the post-conviction court accredited the testimony of trial counsel over that of the petitioner. Additionally, the post-conviction court held,

> After considering all of the evidence in this case, the Court finds that the petitioner has failed to prove any of the allegations in his petition by clear and convincing evidence, therefore his Petition for Post-Conviction Relief will be denied. The Court finds that the advice given and the services rendered by trial counsel [ ] was certainly with[in] the range of competence demanded of attorneys representing defendants in criminal cases. The Court also finds that [the petitioner] has failed to show that his attorney[']s performance was deficient or that any alleged deficient performance by [trial counsel] somehow prejudiced the defendant.
>
> The Court finds that [the petitioner] has failed to present any credible evidence that his trial counsel failed to represent him properly at trial.

After careful review of the entire trial transcripts and all the evidence in this case, the Court finds that none of the trial counsel's actions or omissions were so serious as to fall below the objective standard of reasonableness under prevailing professional norms. The Court finds that [trial counsel]'s representation was appropriate and that he provided [the petitioner] with reasonably effective assistance. The Court further finds that the petitioner has failed to show that there is a reasonable probability that, but for trial counsel's performance, the result of the trial proceeding would have been different.

Since the petitioner has failed to bear his burden of proof in this matter, his Petition will, be denied.

The instant appeal followed.

## *Analysis*

On appeal, the petitioner claims the post-conviction court erred in finding he received the effective assistance of counsel. More specifically, the petitioner insists counsel was ineffective for failing to provide him certain items of the State's discovery – pictures of the victims and hotel receipts from hotels in Madison County, and for failing to file a motion to suppress "several items collected by the Bartlett Police." The State submits the petitioner failed to meet the burden required of him. Upon our review of the record and the arguments of the parties, we agree with the State and affirm the judgment of the post-conviction court.

Initially, we will briefly address the State's claim that the petitioner's appeal is untimely. According to the record, the post-conviction court entered its order denying the petition on October 13, 2021. Therefore, the petitioner had thirty days or until November 12, 2021, to file his notice of appeal. *See* Tenn. R. App. P. 4(a), (c). However, the petitioner did not file his notice of appeal until December 1, 2021. Accordingly, the instant appeal is untimely. However, pursuant to Tennessee Rule of Appellate Procedure 4(a), this Court, in the interest of justice, can waive the timely filing requirement, and in the instant matter, we are inclined to do so based on the nature of the issues presented.

Before a petitioner will be granted post-conviction relief based upon a claim of ineffective assistance of counsel, the record must affirmatively establish, via facts clearly and convincingly established by the petitioner, that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and that counsel's deficient performance "actually had an adverse effect on the defense," *Strickland*

*v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When considering a claim of ineffective assistance of counsel, a reviewing court "begins with the strong presumption that counsel provided adequate assistance and used reasonable professional judgment to make all significant decisions," *Kendrick v. State*, 454 S.W.3d 450, 458 (Tenn. 2015) (citation omitted), and "[t]he petitioner bears the burden of overcoming this presumption," *id.* (citations omitted). We will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Here, the petitioner raises two claims of ineffective assistance. First, the petitioner claims counsel was ineffective for failing to provide him with copies of the pictures the petitioner and the victims used in the Backpage advertisement and for failing to provide him with a copy of a hotel receipt the State introduced at trial. Concerning the pictures, trial counsel testified that he showed the pictures to the petitioner but did not allow the petitioner to keep copies of them because he was concerned the jail would object based on the provocative nature of the pictures. Other than complaining he did not have copies of the pictures, the petitioner has failed to explain how having actual possession of them prior to trial would have resulted in a different outcome at trial or would have caused him to plead guilty rather than going to trial. Instead, the petitioner testified that he knew the victims engaged in prostitution and admitted that he was aware of the pictures and the Backpage advertisement. The petitioner also testified that he rejected the State's plea offer and went to trial "because I wasn't guilty." Based on the petitioner's testimony and the post-conviction court's accreditation of trial counsel's testimony that he shared the pictures with the petitioner, the petitioner failed to meet the burden required of him and is, therefore, not entitled to relief.

As for the motel receipts, the petitioner again claims that had he seen the receipts he *might* have accepted the State's offer and not gone to trial. While trial counsel could not definitively recall whether he showed the receipts to the petitioner, he testified that he

believed he shared all of the State's discovery with the petitioner. Again, the testimony of trial counsel was accredited over that of the petitioner. Additionally, as noted by the post-conviction court, the petitioner admitted knowing the victims were engaged in prostitution and stated that he stayed with them in different hotels in Madison County. Finally, contrary to the petitioner's claim, the receipts were not the only basis upon which the State established Madison County as the proper venue. In addition to the receipts, the victims testified at trial that they practiced prostitution in a motel in Madison County. *Ward*, 2020 WL 974193, at \*1-2. Again, the petitioner has not only failed to prove his factual allegation that trial counsel failed to provide him with a copy of the hotel receipts, but he has also failed to establish that the outcome of his case would have been different had he been provided the receipts. Accordingly, the petitioner has failed to meet the burden required of him and is not entitled to relief.

In his final claim of ineffective assistance of counsel, the petitioner contends trial counsel should have filed "a motion to suppress several items collected by the Bartlett Police." However, the petitioner fails to explain what items should have been suppressed or explain the grounds upon which trial counsel should have argued these unnamed items should have been suppressed. Moreover, the petitioner failed to incorporate a motion to suppress within the proof presented at the post-conviction hearing. To establish a successful claim of ineffective assistance of counsel based on counsel's failure to file a motion to suppress evidence on Fourth Amendment grounds, the petitioner must prove: "(1) a suppression motion would have been meritorious; (2) counsel's failure to file such motion was objectively unreasonable; and (3) but for counsel's objectively unreasonable omission, there is a reasonable probability that the verdict would have been different absent the excludable evidence." *Phillips v. State*, 647 S.W.3d 389, 404 (Tenn. 2022) (citing *Khalil-Alsalaami v. State*, 313 Kan. 472, 486 P.3d 1216, 1239 (Kan. 2021) (citing *United States v. Ratliff*, 719 F.3d 422, 423 (5th Cir. 2013); *Zakrzewski v. McDonough*, 455 F.3d 1254, 1260 (11th Cir. 2006))); *see* W. Mark Ward, *Tennessee Criminal Trial Practice* § 32:18, Westlaw (database updated October 2021). The petitioner failed to satisfy his burden and is, therefore, not entitled to relief.

### Conclusion

Based on the foregoing reasons, we affirm the judgment of the post-conviction court.

_____
J. ROSS DYER, JUDGE