# Supreme Court of Florida

----------

No. SC2025-1009

----------

**EDWARD J. ZAKRZEWSKI, II,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

July 22, 2025

PER CURIAM.

Edward J. Zakrzewski, II, has been sentenced to death for the murders of his wife, Sylvia, and two minor children, Edward and Anna. On July 1, 2025, Governor Ron DeSantis signed a death warrant scheduling Zakrzewski's execution for July 31, 2025. Zakrzewski unsuccessfully sought relief in the circuit court and now appeals. We have jurisdiction. *See* art. V, § 3(b)(1), Fla. Const. We affirm. We also deny Zakrzewski's motion for stay of execution and request for oral argument.

After experiencing marital problems and twice telling a neighbor that he would kill his family rather than go through a divorce, Zakrzewski carried out his plan on June 9, 1994. He killed Sylvia, seven-year-old Edward, and five-year-old Anna with a machete. We recounted the facts surrounding the murders in our opinion on direct appeal. *Zakrzewski v. State* (*Zakrzewski I*), 717 So. 2d 488, 490-91 (Fla. 1998). After the murders, Zakrzewski fled to Hawaii, changed his name, and lived there for four months before turning himself in. *Id.* at 491. Zakrzewski pled guilty to all three murders. *Id.* at 490.

At the end of a penalty-phase trial, the jury recommended sentences of death for the murders of Sylvia and Edward, each by a vote of seven to five, and a sentence of life imprisonment for the murder of Anna. *Id.* at 491. On April 19, 1996, the trial court imposed death sentences for all three murders, overriding the jury's recommendation of life imprisonment for the murder of Anna. *Id.*[1]

---

1. Florida's capital sentencing regime in 1996 was, as it is today, a "hybrid system" in which "[a] jury render[ed] an advisory verdict but the judge [made] the ultimate sentencing

For each murder, the trial court found three aggravating factors: (1) Zakrzewski was previously convicted of other capital offenses (the contemporaneous murders); (2) the murders were committed in a cold, calculated, and premeditated manner without pretense of legal or moral justification (CCP); and (3) the murders were committed in an especially heinous, atrocious, or cruel manner (HAC). *Zakrzewski I*, 717 So. 2d at 491. The trial court gave significant weight to both of Zakrzewski's statutory mitigators—no significant prior criminal history and the fact that the murders were committed while the defendant was under the influence of extreme mental or emotional disturbance—and varying degrees of weight to twenty-four nonstatutory mitigators. *Id.* at 491 nn.1-2.

---

determinations." *Ring v. Arizona*, 536 U.S. 584, 608 n.6 (2002). However, at the time, section 921.141, Florida Statutes (1996), provided in relevant part that a simple majority vote was sufficient for the jury to recommend a sentence of death. A jury's advisory sentence of life imprisonment could be overridden by the trial court "after weighing the aggravating and mitigating circumstances," so long as the court set forth in writing its findings upon which the sentence of death was based as to certain enumerated facts. § 921.141(3), Fla. Stat. (1996).

On direct appeal, this Court affirmed Zakrzewski's convictions and sentences.[2] *Id.* at 495. The sentences became final when the United States Supreme Court denied certiorari review. *Zakrzewski v. Florida,* 525 U.S. 1126 (1999). In the next three decades, Zakrzewski unsuccessfully sought postconviction relief many times in state and federal court.

In federal court, Zakrzewski petitioned for habeas relief in the Northern District of Florida. The Eleventh Circuit Court of Appeals affirmed the district court's denial of relief after reviewing two claims of ineffective assistance of counsel. *See Zakrzewski v. McDonough* (*Zakrzewski III*), 455 F.3d 1254, 1256, 1258-61 (11th

---

2. Zakrzewski's issues on direct appeal were: (1) the trial court erred by finding HAC; (2) the trial court erred by finding CCP; (3) the death sentence is not proportionately warranted; (4) the trial court erred in overriding the jury's recommendation of life for Anna's murder; (5) the trial court allowed prejudicial photographs of the victims to be admitted into evidence; (6) the trial court permitted the State's mental health expert to testify about certain topics; (7) the trial court permitted the State's mental health expert to testify, when the testimony did not rebut the testimony of Zakrzewski's mental health expert; (8) the trial court failed to instruct the jury that Zakrzewski's ability to understand his conduct was substantially impaired; and (9) the trial court failed to instruct the jury on each of Zakrzewski's nonstatutory mitigating factors.

Cir. 2006), *cert. denied*, 549 U.S. 1349 (2007).[3] Zakrzewski then filed a Federal Rule of Civil Procedure 60(b) motion to reopen his federal habeas proceedings, alleging that state counsel and federal habeas counsel perpetrated a fraud on him and the federal court. *See Zakrzewski v. McDonough* (*Zakrzewski IV*), 490 F.3d 1264, 1265 (11th Cir. 2007). The district court first dismissed the motion as a successive habeas petition, but the Eleventh Circuit reversed and remanded for reconsideration on the merits. *Id.* at 1267-68. On remand, the district court denied relief, finding that counsel made no material misrepresentation, and the Eleventh Circuit affirmed. *See Zakrzewski v. McDonough*, No. 3:04CV66/RV, 2007 WL 2827735 (N.D. Fla. Sept. 26, 2007); *Zakrzewski v. McNeil* (*Zakrzewski V*), 573 F.3d 1210, 1211 (11th Cir. 2009).

In state court, Zakrzewski filed five motions for postconviction relief under Florida Rule of Criminal Procedure 3.851 and a petition for state habeas relief. Each was denied. *See Zakrzewski v. State*

---

3. The two ineffective assistance of counsel claims reviewed by the Eleventh Circuit were whether trial counsel was ineffective (1) for failure to object to statements made by the prosecutor in closing argument and (2) for failure to file a motion to suppress evidence contained in the house which constituted the murder scene. *Zakrzewski III*, 455 F.3d at 1256.

(*Zakrzewski II*), 866 So. 2d 688 (Fla. 2003) (affirming circuit court's denial of Zakrzewski's initial rule 3.851 motion); *Zakrzewski v. State* (*Zakrzewski VI*), 13 So. 3d 1057 (Fla. 2009) (unpublished table decision) (affirming the denial of Zakrzewski's first successive rule 3.851 motion); *Zakrzewski v. State* (*Zakrzewski VII*), 115 So. 3d 1004 (Fla. 2012) (unpublished table decision) (affirming the denial of Zakrzewski's second successive rule 3.851 motion); *Zakrzewski v. State* (*Zakrzewski VIII*), 147 So. 3d 531 (Fla. 2014) (unpublished table decision) (affirming the denial of Zakrzewski's third successive rule 3.851 motion); *Zakrzewski v. Jones* (*Zakrzewski IX*), 221 So. 3d 1159 (Fla. 2017) (holding that *Hurst*[4] did not apply retroactively to Zakrzewski's sentences of death and denying Zakrzewski's habeas petition (citing *Asay v. State,* 210 So. 3d 1 (Fla. 2016))); *Zakrzewski v. Jones* (*Zakrzewski X*), 254 So. 3d 324 (Fla. 2018) (affirming the denial of Zakrzewski's fourth successive rule 3.851 motion (citing *Zakrzewski IX,* 221 So. 3d at 1159)).

---

4. *Hurst v. State,* 202 So. 3d 40 (Fla. 2016), *receded from in part by State v. Poole,* 297 So. 3d 487 (Fla. 2020); *see Hurst v. Florida,* 577 U.S. 92 (2016).

Governor Ron DeSantis signed Zakrzewski's death warrant on July 1, 2025, setting an execution date of July 31, 2025. On July 9, 2025, Zakrzewski filed his fifth successive motion for postconviction relief in the Circuit Court of the First Judicial Circuit, in and for Okaloosa County. He raised three claims: (1) executing an individual like him, whose jury vote would have made him ineligible for the death penalty today, is arbitrary and violates the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and corresponding provisions of the Florida Constitution; (2) the Governor's signing of his death warrant immediately prior to the Fourth of July holiday weekend, while another death row defendant's death warrant was still pending, violated his right to access the courts and counsel under the Fifth, Sixth, and Fourteenth Amendments and his right to due process; and (3) the Governor's signing of his death warrant without conducting a recent updated clemency review is arbitrary and violates his rights under the Equal Protection Clause, the Fifth, Eighth, and Fourteenth Amendments, and corresponding provisions of the Florida Constitution. After holding a second case management conference to hear argument on the necessity of an

evidentiary hearing,[5] the circuit court summarily denied relief on all claims.  The circuit court also denied Zakrzewski's motion for a stay of execution.

Zakrzewski now appeals the denial of his postconviction motion, raising four arguments.

## II

We have consistently said:

> Summary denial of a successive postconviction motion is appropriate if the motion, files, and records in the case conclusively show that the movant is entitled to no relief. We review the circuit court's decision to summarily deny a successive rule 3.851 motion de novo, accepting the movant's factual allegations as true to the extent they are not refuted by the record, and affirming the ruling if the record conclusively shows that the movant is entitled to no relief.

*Tanzi v. State*, 407 So. 3d 385, 390 (Fla.) (citing *Owen v. State*, 364 So. 3d 1017, 1022-23 (Fla. 2023)), *cert. denied*, 145 S. Ct. 1914 (2025).  Applying this standard, we affirm the circuit court's

---

5.  *Huff v. State*, 622 So. 2d 982, 983 (Fla. 1993) (requiring the circuit court to conduct a hearing to determine whether an evidentiary hearing is necessary to resolve a death penalty defendant's initial postconviction claims).  This requirement also applies to successive postconviction motions under Florida Rule of Criminal Procedure 3.851(f)(5)(B).  *See Taylor v. State*, 260 So. 3d 151, 157 (Fla. 2018).

summary denial of Zakrzewski's fifth successive postconviction motion.

## A

In his first claim on appeal, Zakrzewski contends that his execution would be unconstitutional and arbitrary because the advisory jury votes at his penalty-phase trial (7-5, 7-5, and 6-6 on counts 1 through 3, respectively) would make him ineligible for the death penalty today, and the circuit court's summary denial of this claim violates his Eighth Amendment rights. We agree with the circuit court that Zakrzewski's claim is untimely, procedurally barred, and meritless.

Zakrzewski's claim is untimely. Florida Rule of Criminal Procedure 3.851 prohibits, with certain exceptions, claims made more than one year after the judgment and sentences at issue become final. Zakrzewski's judgment and sentences became final on January 25, 1999, when the United States Supreme Court denied certiorari review of our decision affirming his sentences. *Zakrzewski*, 525 U.S. 1126.

Zakrzewski argues that his claim challenging the bare majority vote and judicial override was not ripe until the signing of his death

warrant because there was no indication until then that he would not continue to live out his natural life in prison on death row: he had no injury to complain of and nothing to litigate. Leaving aside that this proposed exception would swallow the rule as to timeliness, it is foreclosed by the record. As he concedes in his initial brief, Zakrzewski raised arguments about the jury's simple majority vote in favor of the death penalty, and the sentencing court's decision to sentence him to death for Anna's murder, "even prior to his 1996 trial," "[a]fter being sentenced," and at "every step of the way." It stands to reason, then, these claims were not contingent on the signing of Zakrzewski's death warrant. On the contrary, they have been available to him and extensively litigated in the last three decades. They were ripe for adjudication and in fact adjudicated. *See Texas v. United States*, 523 U.S. 296, 300 (1998) (defining a claim not ripe for adjudication as a claim resting upon contingent future events); *Ford v. State*, 402 So. 3d 973, 978 n.5 (Fla.) (denying the defendant's claim under *Roper v. Simmons*, 543 U.S. 551 (2005), as untimely because his mental age remained stable for the past twenty-five years and therefore was ripe for adjudication), *cert. denied*, 145 S. Ct. 1161 (2025).

Zakrzewski's claim is also procedurally barred.  This Court has many times held that a postconviction claim is procedurally barred where it was or could have been litigated on direct appeal. *See, e.g.*, *Doty v. State*, 403 So. 3d 209, 214 (Fla. 2025) (holding that a claim is precluded from our consideration on collateral review if it could have been raised on direct appeal); *Hendrix v. State*, 136 So. 3d 1122, 1125 (Fla. 2014) ("Claims raised and rejected in prior postconviction proceedings are procedurally barred from being relitigated in a successive motion."); *Turner v. Dugger*, 614 So. 2d 1075, 1078 (Fla. 1992) (barring postconviction claims, or variations thereof, that have been raised on direct appeal).

Here, Zakrzewski raised the same claim on direct appeal, contending that the trial court erred in overriding the jury's recommendation of life imprisonment for the murder of Anna.  We affirmed, finding that "the facts suggesting the sentence of death for all three of these murders are clear and convincing, and as to Anna, even more compelling," and we concluded, " 'no reasonable person could differ' as to the appropriateness of the death penalty for the murder of Anna."  *Zakrzewski I*, 717 So. 2d at 494 ("In order to sustain a sentence of death following a jury recommendation of life,

the facts suggesting a sentence of death should be so clear and convincing that virtually no reasonable person could differ." (quoting *Tedder v. State*, 322 So. 2d 908, 910 (Fla. 1975))). Zakrzewski cannot now use the postconviction proceeding as a means of obtaining a second appeal of the issue. *See Barwick v. State*, 361 So. 3d 785, 793 (Fla. 2023) ("[U]sing 'a different argument to relitigate the same issue' . . . is inappropriate." (quoting *Medina v. State*, 573 So. 2d 293, 295 (Fla. 1990))).

Next, relying on *Hurst v. Florida*, 577 U.S. 92, and invoking evolving standards of decency, Zakrzewski argues he could not be sentenced to death today on the basis of a simple majority advisory vote from a penalty-phase jury. He also contends that this Court is not bound by the law of the case doctrine to follow erroneous precedents.

To the extent this is a repackaged *Hurst* claim, we have, twice, denied it in Zakrzewski's postconviction proceedings. *See Zakrzewski IX*, 221 So. 3d at 1159 (denying habeas relief and reiterating our holding from *Asay*, 210 So. 3d 1, that *Hurst v. Florida* and *Hurst v. State* do not apply retroactively to death sentences finalized before *Ring*); *Zakrzewski X*, 254 So. 3d at 324

- 12 -

(denying Zakrzewski's fourth successive postconviction motion raising *Hurst*). Here, we again deny Zakrzewski's invitation to reconsider our precedent on the retroactivity of *Hurst v. Florida* and *Hurst v. State*.

Even without the time and procedural bars, Zakrzewski's claim is meritless. As acknowledged in his brief, at the time of Zakrzewski's trial, the trial court could override a jury's recommendation where "the facts suggesting a sentence of death [were] so clear and convincing that virtually no reasonable person could differ." *Tedder*, 322 So. 2d at 910 (citing § 921.141(3), Fla. Stat. (1973)); *see also Mahn v. State*, 714 So. 2d 391, 401 (Fla. 1998) (stating that the standard set out in *Tedder* was the standard for a trial court to override a jury recommendation of life imprisonment at the time). In its sentencing order, the trial court explicitly stated that all of the physical evidence in the case and related expert testimony established beyond a reasonable doubt that Anna was still living, saw her brother's mutilated body, and knew her own father was about to kill her before she was murdered with a machete. "This [c]ourt could not imagine a more heinous and atrocious way to die." *State v. Zakrzewski*, No. 94-1283-CFA,

- 13 -

1996 WL 34578426 (Fla. 1st Cir. Ct. Apr. 19, 1996). As we have affirmed on direct appeal, "no reasonable person could differ as to the appropriateness of the death penalty for the murder of Anna." *Zakrzewski I*, 717 So. 2d at 494 (internal quotation marks omitted).

We affirm the circuit court's summary denial of Zakrzewski's first claim.

## B

Zakrzewski next claims that the thirty-day period between the signing of his death warrant and expected execution, overlapping with the Fourth of July holiday and the pendency of another death row inmate's execution, deprived him of meaningful access to counsel and the courts.

We have repeatedly held that the Governor's broad discretion in selecting which death warrants to sign and when does not violate the United States Constitution or the Florida Constitution. *See, e.g., Hutchinson v. State*, No. SC2025-0517, 50 Fla. L. Weekly S71a, S73, 2025 WL 1198037, at *5 (Fla. Apr. 25) ("[W]e are aware of no constitutional principle that demands a fixed formula, thereby limiting the decisionmaker in determining the order of execution."), *cert. denied*, No. 24-7079, 145 S. Ct. 1980 (May 1, 2025); *Gore v.*

*State*, 91 So. 3d 769, 780 (Fla. 2012) (rejecting claims that the Governor's absolute discretion to sign death warrants violates the United States Constitution); *Dailey v. State*, 283 So. 3d 782, 787-88 (Fla. 2019) ("We have consistently rejected the assertion that the warrant selection process is arbitrary because there are no standards that constrain the Governor's discretion in determining which warrant to sign." (collecting cases)).

Here, Zakrzewski had meaningful access to counsel and the courts after his death warrant was signed. Zakrzewski acknowledges having discussed his death warrant and legal claims for a postconviction motion with counsel. The circuit court timely held case management hearings, scheduled filing deadlines, assessed the necessity of an evidentiary hearing, considered Zakrzewski's multiple demands for additional public records, and ruled upon his postconviction motion.

Zakrzewski also contends that an expedited process of warrant litigation deprived him of his due process rights. We reject this claim, as this Court recently did in other cases challenging the death warrant time period. *See Tanzi*, 407 So. 3d at 393; *Bell v. State*, No. SC2025-0891, 50 Fla. L. Weekly S155a, S163, 2025 WL

- 15 -

1874574, at *17 (Fla. July 8), *cert. denied*, No. 25-5083, 2025 WL 1942498 (U.S. July 15, 2025).

## C

Zakrzewski next claims that the Governor's signing of his death warrant without a recent updated clemency review violates his rights to due process and equal protection and his rights under the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and the corresponding provisions of the Florida Constitution.

This Court has previously rejected similar challenges to Florida's clemency process. We reiterated that, due to important considerations about the separation of powers, we do not second-guess the executive branch in matters of clemency in capital cases. "The clemency process in Florida derives solely from the Florida Constitution and we have recognized that the people of the State of Florida have vested 'sole, unrestricted, unlimited discretion exclusively in the executive in exercising this act of grace.'" *Carroll v. State*, 114 So. 3d 883, 888 (Fla. 2013) (quoting *Sullivan v. Askew*, 348 So. 2d 312, 315 (Fla. 1977)); *see also Bundy v. State*, 497 So. 2d 1209, 1211 (Fla. 1986) ("[T]his Court has always viewed the

pardon powers expressed in the Constitution as being peculiarly within the domain of the executive branch of government." (quoting *In re Advisory Op. of the Governor*, 334 So. 2d 561, 562-63 (Fla. 1976))).

No specific procedures are mandated in clemency proceedings. *See Bundy*, 497 So. 2d at 1211 (rejecting the defendant's claim that he must be allowed time to prepare and present an application for executive clemency before his death sentence may be carried out); *Marek v. State*, 14 So. 3d 985, 998 (Fla. 2009) ("In *Ohio Adult Parole Authority v. Woodard*, 523 U.S. 272 (1998), five justices of the United States Supreme Court concluded that some minimal procedural due process requirements should apply to clemency proceedings. But none of the opinions in that case required any specific procedures or criteria to guide the executive's signing of warrants for death-sentenced inmates.").

Zakrzewski has provided no reason for the Court to depart from its decisions on these matters.

And in any event, Zakrzewski has indeed had the benefit of a clemency proceeding. As his postconviction motion acknowledged, he initiated clemency proceedings in 2007 and made presentations

- 17 -

to the Florida Commission on Offender Review. The death warrant signed by Governor DeSantis expressly states that "executive clemency for EDWARD J. ZAKRZEWSKI, II, as authorized by Article IV, Section 8(a), of the Florida Constitution, was considered pursuant to the Rules of Executive Clemency, and it has been determined that executive clemency is not appropriate." Under our cases, these proceedings were sufficient. *See Valle v State*, 70 So. 3d 530, 551 (Fla. 2011) (denying the defendant's claim that his clemency proceeding did not serve the fail-safe purposes because it was done before his postconviction proceedings); *Rutherford v. State*, 940 So. 2d 1112, 1122-23 (Fla. 2006); *Johnson v. State*, 27 So. 3d 11, 24 (Fla. 2010); *Marek v. State*, 8 So. 3d 1123, 1129 (Fla. 2009).

### D

In his final claim on appeal, Zakrzewski contends that the circuit court abused its discretion in denying his requests for public records from various state agencies under Florida Rule of Criminal Procedure 3.852(i), which violates his rights to due process and equal protection under the Eighth and Fourteenth Amendments to

the United States Constitution and the corresponding provisions of the Florida Constitution.

We review a circuit court's denial of requests for public records for abuse of discretion. *See Tanzi*, 407 So. 3d at 391. Rule 3.852(i)(2) limits the production of additional public records to only those demonstrating:

> (A) collateral counsel has made a timely and diligent search of the records repository;
>
> (B) collateral counsel's affidavit identifies with specificity those additional public records that are not at the records repository;
>
> (C) the additional public records sought are either relevant to the subject matter of a proceeding under rule 3.851 or appear reasonably calculated to lead to the discovery of admissible evidence; and
>
> (D) the additional records request is not overly broad or unduly burdensome.

Fla. R. Crim. P. 3.852(i)(2). We have held that rule 3.852 is "not intended to be a procedure authorizing a fishing expedition for records" and that records requests made under rule 3.852(i) "must show how the requested records relate to a colorable claim for postconviction relief and good cause as to why the public records request was not made until after the death warrant was signed."

*Dailey*, 283 So. 3d at 792 (internal citations and quotations omitted).

Here, Zakrzewski requested additional public records from nine state agencies under rule 3.852(i) after his death warrant was signed. The circuit court denied each request with specified reasons. For Zakrzewski's records demands relating to Florida's lethal injection protocol from the Department of Law Enforcement, the Department of Corrections, and the Office of the Medical Examiner, the circuit court found them overly broad, not related to a colorable claim for relief, and without good cause for failing to request them prior to the signing of the warrant. For his requests for clemency records from the Office of the Attorney General, the Executive Office of the Governor, the Commission on Offender Review, and the Office of the Okaloosa County Clerk of Court, the circuit court denied them because clemency records are confidential. For his requests to the Okaloosa County Sheriff's Office and the Office of the State Attorney for records relating to his investigation and prosecution, responsive records did not exist, and the demands were moot.

We find no abuse of discretion in the circuit court's decisions. Zakrzewski's "any and all" requests were overly broad and burdensome. *See Moore v. State*, 820 So. 2d 199, 204 (Fla. 2002) (upholding the trial court's discretion to deny public records requests that are "overly broad, of questionable relevance, and unlikely to lead to discoverable evidence"). His all-encompassing requests for records relating to Florida's lethal injection protocol bear no relation to a colorable postconviction claim for relief. *See Muhammad v. State*, 132 So. 3d 176, 203 (Fla. 2013) ("[R]equests related to actions of lethal injection personnel in past executions do not relate to a colorable claim concerning future executions because there is a presumption that members of the executive branch will perform their duties properly."); *Valle*, 70 So. 3d at 549 (denying requests for lethal injection protocol because the records sought were not related to a colorable Eighth Amendment claim). And clearly, records relating to the clemency process are confidential and exempt from public records requests under section 14.28, Florida Statutes, and the Florida Rules of Executive Clemency. *See Gudinas v. State*, No. SC2025-0794, 50 Fla. L. Weekly S124, S127, 2025 WL 1692284, at *9 (Fla. June 17) ("The requested records

relating to the clemency process are exempt from disclosure."), *cert. denied*, No. 24-7457, 2025 WL 1739159 (U.S. June 24, 2025).

The circuit court's denial of Zakrzewski's requests for public records was far from arbitrary or unreasonable but instead supported by adequate reasons. *See State v. Coney*, 845 So. 2d 120, 137 (Fla. 2003) ("Discretion is abused only when the judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable person would take the view adopted by the trial court." (quoting *White v. State*, 817 So. 2d 799, 806 (Fla. 2002))).

### III

We affirm the summary denial of Zakrzewski's motion for postconviction relief, along with the circuit court's denial of his demands for public records. Accordingly, we also deny his motion for stay of execution and request for oral argument. No motion for rehearing will be entertained. The mandate shall issue immediately.

It is so ordered.

MUÑIZ, C.J., and CANADY, LABARGA, COURIEL, GROSSHANS, FRANCIS, and SASSO, JJ., concur.

An Appeal from the Circuit Court in and for Okaloosa County,
Lacey Powell Clark, Judge
Case No. 461994CF001283XXXAXX

Dawn B. Macready, Capital Collateral Regional Counsel, Lisa M. Fusaro, Assistant Capital Collateral Regional Counsel, and Alicia Hampton, Assistant Capital Collateral Regional Counsel, Northern Region, Tallahassee, Florida,

for Appellant

James Uthmeier, Attorney General, Charmaine M. Millsaps, Senior Assistant Attorney General, and Janine D. Robinson, Assistant Attorney General, Tallahassee, Florida,

for Appellee